Judy BARBOUR and Cookbook
Resources, L.L.C.,
Plaintiffs,

v.

James HEAD and Penfield Press,
Inc., Defendants.

No. G–01–491.

United States District Court,
S.D. Texas,
Galveston Division.

Dec. 26, 2001.

G.P. Hardy, III, Houston, TX, for plaintiffs.

Karen Bryant Tripp, Houston, TX, for defendants.

## ORDER GRANTING IN PART DEFENDANT PENFIELD PRESS' MOTION TO DISMISS

KENT, District Judge.

This case involves a rustled cowboy cookbook. On August 13, 2001, Plaintiffs Judy Barbour ("Barbour") and Cookbook Resources, L.L.C. ("Cookbook Resources") filed causes of action for copyright infringement, unfair competition through misappropriation, and conversion, with which they're fixin' to brand Defendants James Head ("Head") and Penfield Press, Inc. ("Penfield Press"). On October 25, 2001, to bust out of the corral, Defendant Penfield Press filed a Motion to Dismiss pursuant to Fed.R.Civ.P. 12(b)(6). For the reasons articulated below, Defendant's Motion to Dismiss shall be treated as a Motion for Summary Judgment and **GRANTED IN PART.**

### I. FACTUAL SUMMARY

Plaintiff Barbour is the rootin'-tootin' author of *Cowboy Chow*,[1] a Texas-themed cookbook containin' larapin recipes, entertainin' ideas, historical information, and other cowboy fun. According to Plaintiffs, Barbour obtained a registered copyright on *Cowboy Chow* when it was first published in 1988. Following the book's initial commercial success, there being a lot of hungry cowpokes out there, Barbour entered into a publishing and manufacturing agreement with Cookbook Resources on February 24, 2001, whereby Cookbook

---

1. It could have been named *How Now to Brown a Cow* ...

Resources acquired Barbour's copyright on *Cowboy Chow.* Sometime prior to or during 1996, an internet magazine published by Defendant Head, called *Texas Online,* began publishing virtually verbatim recipes from *Cowboy Chow* without Barbour's knowledge or consent. In 1996, Defendant Penfield Press published a compilation cookbook by author Dianna Stevens ("Stevens") entitled *License to Cook Texas Style*[2] that similarly published virtually verbatim recipes from *Cowboy Chow* without Barbour's knowledge or permission. Many of these recipes were expressly credited to Jim Head at Texas Online.[3] After discovering these copyright infringements in May of 2001, Barbour and Cookbook Resources filed this lawsuit, specifically bringing causes of action for copyright infringement under the Copyright Act of 1976 ("Copyright Act"), 17 U.S.C. § 101 *et seq.,* and Texas state law claims for unfair competition through misappropriation and conversion.

In its Motion to Dismiss, Defendant Penfield Press seeks a dismissal of Plaintiffs' claims based on the following three grounds: (1) Plaintiffs' recipes are not copyrightable; (2) Plaintiffs' claims are barred by the applicable statutes of limitations; and (3) Plaintiffs' state law claims are preempted by federal law. Defendant also identifies approximately twenty reci-pes that it contends are identical, or similar, to those stated in *Cowboy Chow.*[4] Each of these recipes shares the same or a similar title, listing of ingredients, and directions for preparation, as well as sometimes employing other miscellaneous identical language. Among the highlights from this tempting list of "cow-mestibles" are "Armadillo Eggs," "Cattle Baron Cheese Dollars," "Gringo Gulch Grog," and the ever-chic "Frito Pie." In their Response, Plaintiffs refute Defendant's assertions that the alleged copied material is not copyrightable and that Plaintiffs' claims are time-barred, but concede that their state law claims properly sound in copyright and therefore are preempted by federal copyright law.

## II. ANALYSIS

### A. Proper Treatment of Defendant's Motion

Penfield Press characterizes its motion as a Motion to Dismiss for Failure to State a Claim Upon Which Relief Can be Granted pursuant to Fed.R.Civ.P. 12(b)(6). However, the Court finds that Defendant is actually seeking summary judgment relief under Fed.R.Civ.P. 56. In relevant part, Rule 12(b) stipulates: "If, on a motion asserting the defense numbered (6) to

---

**2.** Which could have been called *And the Cow Jumped Over the Spoon . . .*

**3.** In her affidavit, Stevens declares that she found some recipes on the internet website, *Texas Online,* and then published them in *License to Cook Texas Style* with Head's express permission. Per Head's request, Stevens credited Jim Head and *Texas Online* for each recipe obtained from *Texas Online.* However, Stevens claims she never saw a copy of *Cowboy Chow* until the filing of this lawsuit. (Stevens Decl. ¶¶ 3, 5.)

The Court has previously enunciated its belief that the Internet is "one large catalyst for rumor, innuendo, and misinformation," in large part because it provides no way of verifying the authenticity of the information it presents. *St. Clair v. Johnny's Oyster & Shrimp, Inc.,* 76 F.Supp.2d 773, 774 (S.D.Tex. 1999) (Kent, J.). The instant lawsuit aptly demonstrates that "[a]nyone can put anything on the Internet. No web-site is monitored for accuracy and nothing contained therein is under oath or even subject to independent verification absent underlying documentation." *Id.* at 775. In short, information obtained from the Internet is "inherently untrustworthy." *Id.* at 774.

**4.** In addition, no doubt, to being lip-smackin' good!

dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." Fed.R.Civ.P. 12(b). In the instant case, Defendant attached five exhibits to its Motion to Dismiss, including two affidavits, a copy of *License to Cook Texas Style,* and substantial portions of *Cowboy Chow.* As such, the Court will treat Defendant's Motion to Dismiss as a Motion for Summary Judgment under Rule 56.

## B. Legal Standard

■ Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). When a motion for summary judgment is made, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Issues of material fact are "genuine" only if they require resolution by a trier of fact. *See id.* at 248, 106 S.Ct. at 2510. The mere *existence* of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. Only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgment. *See id.* at 247–48, 106 S.Ct. at 2510. If the evidence is such that a reasonable fact finder could find in favor of the nonmoving party, summary judgment should not be granted. *See id.; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Dixon v. State Farm Fire & Cas. Co.,* 799 F.Supp. 691, 694 (S.D.Tex.1992) (noting that summary judgment is inappropriate if the evidence could lead to different factual findings and conclusions). Determining credibility, weighing evidence, and drawing reasonable inferences are left to the trier of fact. *See Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513.

■ Procedurally, the party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. at 2553; *see also* Fed.R.Civ.P. 56(c). The burden then shifts to the nonmoving party to establish the existence of a genuine issue for trial. *See Matsushita,* 475 U.S. at 585–87, 106 S.Ct. at 1355–56; *Wise v. E.I. DuPont de Nemours & Co.,* 58 F.3d 193, 195 (5th Cir.1995). The Court must accept the evidence of the nonmoving party and draw all justifiable inferences in favor of that party. *See Matsushita,* 475 U.S. at 585–87, 106 S.Ct. at 1355–56. However, to meet its burden, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts," but instead, must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 586–87, 106 S.Ct. at 1355–56 (quoting Fed.R.Civ.P. 56(e)).

## C. Copyright Infringement

■ Defendant contends in its Motion to Dismiss that Plaintiffs' claim for copyright infringement fails as a matter of law because cooking recipes are mere processes and procedures and therefore not copyrightable pursuant to the clear language of 17 U.S.C. § 102(b). In support of its argument, Defendant points to a letter from

the Register of Copyrights stating that "mere listings of ingredients as in recipes, formulas, compounds or prescriptions are not subject to copyright protection.... [and][c]opyright protection does not extend to names, titles, short phrases, ideas, systems or methods." (Def.'s Mot. Dismiss, Ex. 5.) Defendant also relies extensively on *Publications International, Ltd. v. Meredith Corp.*, 88 F.3d 473 (7th Cir. 1996), a case in which the Seventh Circuit held that recipes copied from a particular compilation cookbook[5] were not entitled to copyright protection. However, because the instant case is materially distinguishable on its facts (with which the Court is not cowed), and Defendant misconstrues the statement issued by the Register of Copyrights, as well as the holding in *Publications International,* the Court ain't gonna be steered into grantin' summary judgment on this issue.

■■■ No matter what else you herd, to prevail on a claim of copyright infringement, a plaintiff must prove ownership of the copyrighted material and copying by the alleged infringer. *Computer Mgmt. Assistance Co. v. DeCastro, Inc.*, 220 F.3d 396, 400 (5th Cir.2000) (citing *Alcatel USA, Inc. v. DGI Technologies, Inc.*, 166 F.3d 772, 790 (5th Cir.1999)). Copyright ownership is shown by proof of originality and copyrightability in the work as a whole and by compliance with applicable statutory formalities. *Id.* (citations omitted). However, not all copying by a defendant is actionable as copyright infringement. A copy is legally actionable only if the alleged infringer actually used the copyrighted material to create his own work, and substantial similarity exists between the two works. *Id.* (citing *Alcatel,* 166 F.3d at 790). The factual question of whether the defendant actually used the copyrighted material can be inferred by

showing proof of access to the copyrighted work and probative similarity between the defendant's work and the copyrighted work. *Id.* In addition, not all types of work are afforded copyright protection. The Copyright Act protects original works of authorship fixed in any tangible medium of expression, ranging from literary and dramatic works to motion pictures and sound recordings. 17 U.S.C. § 102(a). However, in no case does copyright protection extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work. *Id.* § 102(b).

The Court agrees with Defendant's assertion that the clear language of 17 U.S.C. § 102(b) denies copyright protection to mere procedures or processes. However, whether or not food recipes constitute procedures or processes ineligible for copyright protection is a question of first impression in this jurisdiction. The Fifth Circuit has never addressed the copyrightability of food recipes, and this Court is not bound to follow the Seventh Circuit's ruling in *Publications International.* Although Defendant cites language from the Register of Copyrights indicating that recipes are uncopyrightable, this letter is not authoritative. More importantly, Defendant improperly construes the meaning of the letter by conveniently omitting the following italicized language: "Mere listings of ingredients as in recipes, formulas, compounds or prescriptions are not subject to copyright protection. *However, where a recipe or formula is accompanied by substantial literary expression in the form of an explanation or directions, or when there is a combination of recipes, as in a cookbook,*

---

5. No doubt a citified book of no use fer the varmints cooked hereabouts.

*there may be a basis for copyright protection."* (Def.'s Mot. Dismiss, Ex. 5.) Thus, contrary to Defendant's assertion, the statement issued by the Register of Copyrights, to whatever extent it is instructive, does not declare that recipes are *per se* uncopyrightable.

Furthermore, even assuming *arguendo* that the Court were to adopt the Seventh Circuit's holding in *Publications International,* Defendant is incorrect in concluding that this case dictates the summary dismissal of Plaintiffs' copyright infringement claim. The claimant in *Publications International* averred that an alleged infringer had poached several recipes from its compilation cookbook entitled *Discover Dannon—50 Fabulous Recipes With Yogurt.* After carefully considering the particular characteristics and integrity of the copied material, and in light of the Supreme Court's compilation copyright jurisprudence as announced in *Feist Publications, Inc. v. Rural Tel. Serv. Co., Inc.,* 499 U.S. 340, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991) (holding that "white pages" telephone listings are facts unprotected by copyright law), the Seventh Circuit determined that the copied recipes consisted of nothing more than rote recitations of cooking ingredients and instructions that were therefore not sufficiently expressive to warrant copyright protection. *See Publications Int'l,* 88 F.3d at 480. In drawing this conclusion, however, the Seventh Circuit also specifically stated: "We do not express any opinion whether recipes are or are not *per se* amenable to copyright pro-

tection, for it would be inappropriate to do so. The prerequisites for copyright protection necessitate case-specific inquiries, and the doctrine is not suited to broadly generalized prescriptive rules." *Id.*

■ The Court notes that the facts in the instant case are materially distinguishable from *Publications International.* First, it is unclear from the incomplete record whether or not *Publications International* and the entire compilation copyright line of cases even apply to this lawsuit. The claimant in *Publications International* owned a compilation copyright in *Discover Dannon,* as reflected by the self-declared description of the work as a "compilation" and "collective work" in its certificate of registration.[6] However, Defendant has not shown that this is also the case here. Neither Plaintiffs nor Defendant have pled or attempted to prove the type of copyright owned by Barbour and Cookbook Resources. Although *Cowboy Chow* may have been copyrighted as a compilation work, it is just as conceivable that it was registered as a literary work, given the various historical tidbits and other information that it contained. If the latter is true, the Court questions the propriety and utility of strictly applying the holdings of compilation copyright cases like *Feist* and *Publications International.*

Additionally, even if Plaintiffs' cookbook is copyrighted as a factual compilation or collective work, there still exists a genuine issue of material fact as to whether or not the copied recipes are sufficiently expres-

---

**6.** The Copyright Act defines a "compilation" as "a work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship." 17 U.S.C. § 101. The term "compilation" includes collective works. *Id.* A compilation copyright protects the order and manner of

the presentation of the compilation's elements, but does not necessarily embrace the actual elements themselves. *Feist,* 499 U.S. at 348, 111 S.Ct. at 1289. The only expression entitled to copyright protection, then, is the manner in which the compiler has selected and arranged the facts. *Id.,* 499 U.S. at 349, 111 S.Ct. at 1289.

sive to warrant protection under the Copyright Act. The court in *Publications International* refused to hold that recipes are unprotected as a matter of law and instead recognized that "certain recipes may be copyrightable." 88 F.3d at 481. The court elaborated that recipes may warrant copyright protection in a variety of circumstances, such as where the recipe includes "suggestions for presentation, advice on wines to go with the meal, or hints on place settings with appropriate music," or where the recipes are accompanied by "tales of their historical or ethnic origin." *Id.* Although the particular recipes copied from *Discover Dannon* were determined not to exhibit these types of expressions, the Court finds that there exists a genuine issue of material fact in the instant case as to whether or not the recipes procured from *Cowboy Chow* represent mere unprotected facts or actual protected expression. Of the twenty recipes identified in Defendant's Motion as being identical or similar, the Court finds that at least a few contain statements that may be sufficiently expressive to exceed the boundaries of mere fact. Unlike its counterparts in *Publications International*, the recipes in *Cowboy Chow* are infused with light-hearted or helpful commentary, some of which also appears verbatim in *License to Cook Texas Style*. For example, the *Cowboy Chow* recipe for "Cherokee Chicken" states in part: "Heat oil in heavy skillet. Add sugar and let it brown and bubble. (This is the secret to the unique taste!)" The virtually identical recipe in *License to Cook Texas Style* mimics this parenthetical and arguably expressive language, excepting the exclamation point: "Heat oil in heavy skillet. Add sugar and let it brown and bubble (this is the secret to the unique taste)." Similarly oriented anecdotal language also appears in recipes for "Crazy Horse Cranberry Sauce with Raisins," (stating "Great with all your meats!" in

*Cowboy Chow* as compared to "Great with meats!" in *License to Cook Texas Style* ), as well as "Pico de Gallo" (translating "Pico de Gallo" as "Beak of the Rooster" in both books). In other instances, Barbour's suggestions on the presentation of food also appear in Defendant's book. For example, both cookbooks suggest using the "Frito" bag as a bowl for eating "Frito Pie," serving "Prairie Fire Dip" hot in a chafing dish, and filling a "glass cowboy boot mug" with "Red Beer." Based on this small sample of recipes alone, the Court cannot conclude as a matter of law that the material allegedly copied from *Cowboy Chow* is nothing more than mere recitations of facts that are not entitled to copyright protection. Barbour's recipes contain more than mechanical listings of ingredients and cooking directions, and as such, the Court will not grant summary judgment in favor of Defendant on the unqualified notion that recipes are uncopyrightable.

### D. Statute of Limitations

■ Penfield Press also seeks summary judgment on the basis that Plaintiffs' claims are time-barred. Specifically, Defendant argues that because Plaintiffs' state and federal law causes of action began accruing when *License to Cook Texas Style* was first published in 1996, Plaintiffs' claims for unfair competition through misappropriation, conversion, and copyright infringement are barred by the applicable two- and three-year statutes of limitations. In contrast, Plaintiffs contend that these claims did not commence accruing until Barbour first discovered the copyright violations in May of 2001. Plaintiffs further argue that irrespective of the accrual date, they may still recover for damages accumulated three years prior to the filing of the suit. Because the Court dismisses Plaintiffs' state law claims below on federal

preemption grounds, it need only address the timeliness of Plaintiffs' copyright infringement action.

██ Civil actions brought under the Copyright Act must commence within three years from the time the claim accrues. 17 U.S.C. § 507(b). Thus, the material inquiry in the present case is exactly when Plaintiffs' claim against Penfield Press accrued. Plaintiff asserts, and the Court concurs, that nothing in the law of the Fifth Circuit forecloses the application of the discovery rule or any other equitable tolling rules to copyright infringement actions. In *Daboub v. Gibbons*, 42 F.3d 285 (5th Cir.1995), the Fifth Circuit determined that the plaintiffs' copyright infringement claim was time-barred because they either actually or constructively knew of the defendants' infringing conduct four years prior to bringing suit. *See id.* at 291. Although never explicitly stated, the court in *Daboub* impliedly accepted the underlying assertion that the discovery rule applied in the context of copyright infringement claims.[7] *See id.* Furthermore, in *Prather v. Neva Paperbacks, Inc.*, 446 F.2d 338 (5th Cir.1971), the Fifth Circuit unequivocally stated that general equitable tolling doctrines apply to copyright infringement actions. *Id.* at 340 (applying the equitable doctrine of fraudulent concealment). *See also Hotaling v. Church of Jesus Christ of Latter–Day Saints*, 118 F.3d 199, 202 (4th Cir.1997) ("A cause of action for copyright infringement accrues when one has knowledge of a violation or is chargeable with such knowledge."). Based on this precedent, the Court finds that general equitable tolling doctrines, including the discovery rule, apply to Plaintiffs' copyright infringement claim.

██ Having determined that general equitable tolling principles apply, the Court cannot hold that Plaintiffs' claims are time-barred as a matter of law. In the instant case, Plaintiffs allege, and Penfield Press does not dispute, that Plaintiffs only discovered Defendant's infringing conduct when Barbour happened upon a copy of *License to Cook Texas Style* in a bookstore in Bandera, Texas in May of 2001. Accepting this uncontroverted fact as true, then, Plaintiffs' cause of action arguably did not accrue until Barbour first discovered Defendant's book in May of this year.[8] However, even if Defendant is correct that Plaintiffs' claim began accruing at the time *License to Cook Texas Style* was published in 1996, it is well established that the three-year limitations period bars only the remedy, not the substantive right. *See, e.g. Hotaling*, 118 F.3d at 202 ("A party does not waive the right to sue for infringements that accrue within three years of filing by not asserting related claims that accrued beyond three years."); *Makedwde Publishing Co. v. Johnson*, 37 F.3d 180, 182 (5th Cir.1994) (holding that defendant is "only liable for *his* acts of infringement committed within three years prior to Plaintiffs' lawsuit"); *Prather*, 446 F.2d at 340 ("[T]he intent of the drafters was that the limitations period would affect the

7. Specifically, the *Daboub* court noted that the discovery rule did not apply to certain of the plaintiffs' state law causes of action, but proceeded to apply the discovery rule to the plaintiffs' remaining claims, including one brought under the Copyright Act. 42 F.3d at 291 & n. 10.

8. The Court is aware that the recordation of a document in the Copyright Office may provide constructive notice of the work under 17 U.S.C. § 205(c). However, Penfield Press never raises this argument in its Motion nor provides any evidence that *License to Cook Texas Style* was properly registered in the Copyright Office in accordance with the statute in 1996. Additionally, even if such evidence were provided, the Court notes that other equitable considerations might still operate to toll the limitations period.

remedy only, not the substantive right, and that equitable considerations would therefore apply to suspend the running of the statute."). Because Penfield Press has not proven that Plaintiffs' cause of action accrued prior to May of 2001, the Court cannot grant summary judgment on the ground that Plaintiffs' federal claim is time-barred.

### E. State Law Claims

Finally, Defendant argues that Plaintiffs' state law claims for unfair competition through misappropriation and conversion are preempted by federal copyright law and therefore subject to dismissal. Takin' the bull by its cooked horns, Plaintiffs concede that their state law claims properly sound in copyright, but explain that these claims were brought as "insurance" against the dismissal of their federal cause of action. Although the Court appreciates Plaintiffs' all-inclusive approach, Plaintiffs' state law claims are clearly preempted by federal law. The Copyright Act stipulates that it exclusively governs all legal and equitable rights falling within the general scope and subject matter of copyright, such that "no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State." 17 U.S.C. § 301(a). Because Plaintiffs in this case admit that their state law claims sound in copyright, the Court need not elaborate on this issue any further. The Court finds that Plaintiffs' state law claims for unfair competition through misappropriation and conversion are preempted by federal copyright law, and therefore **GRANTS** summary judgment in favor of Defendant on this issue *only*, and **DISMISSES** Plaintiffs' state law claims *only*.

### III. CONCLUSION

For all of the reasons set forth above, Defendant Penfield Press' Motion to Dismiss, treated as a Motion for Summary Judgment, is hereby **GRANTED IN PART.** The Court specifically **DENIES** summary judgment on the issues relating to Plaintiffs' copyright infringement claim, and **GRANTS** summary judgment on the issue of federal preemption *only*. Because Plaintiffs' state law claims are preempted by federal law, the Court hereby **DISMISSES** Plaintiffs' claims arising under Texas state law for unfair competition through misappropriation and conversion *only*. A final judgment regarding such will be entered in due course.

**IT IS SO ORDERED.**