United States Court of Appeals
Fifth Circuit

**F I L E D**

**August 27, 2003**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

‾‾‾‾‾‾‾‾‾

No. 02-41279

‾‾‾‾‾‾‾‾‾

WILLIAM C. CARSON,

Plaintiff — Appellant,

versus

DYNEGY, INC.; DYNEGY HOLDINGS, INC.,
formerly doing business as Dynegy, Inc.;
DYNEGY MARKETING AND TRADE;
DYNEGY POWER CORP.; DMT HOLDINGS, INC.;
DYNEGY G.P., INC.; BG HOLDINGS, INC.;
DYNEGY UPPER HOLDING; DYNEGY HOLDING
COMPANY, L.L.C.; DYNEGY POWER MARKET;
DMT L.P., L.L.C.; DMT G.P. L.L.C.; DMT
HOLDINGS, L.P.,

Defendants — Appellees.

--------------------
Appeal from the United States District Court
for the Southern District of Texas
--------------------

Before JONES and BENAVIDES, Circuit Judges, and KAZEN, District Judge.[*]

BENAVIDES, Circuit Judge:

Before this court is an appeal from the district court's grant of summary judgment in a

case concerning the federal copyright laws. Appellant argues that the district court erred by (i)

holding that appellees had an irrevocable, nonexclusive implied license, which precluded

‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾

[*] Chief District Judge of the Southern District of Texas, sitting by designation.

1

appellant's claim of copyright infringement; (ii) determining that the doctrine of estoppel also barred the infringement claim; (iii) holding that appellant's state-law conversion claims were preempted by federal copyright law; and (iv) declining to resolve appellant's prayer for declaratory relief. Because estoppel bars appellant's infringement claim, we affirm the district court's granting summary judgment. We reverse the district court's determination that appellant's state-law claims are preempted by federal law and remand this issue as well as appellant's declaratory judgment claim to the district court for further proceedings consistent with this opinion.

## I.

The dispute in this case involves the ownership of certain copyrightable expressions in the 24HA Worksheet ("24HA" or "the 24HA worksheet"), a worksheet created by plaintiff-appellant William C. Carson, using Microsoft Excel, a spreadsheet program. Carson, a resident of Texas, began working for the defendants-appellees ("Dynegy"),[1] a group that trades energy, in late 1998 as an analyst in the gas accounting department. In June 1999, Carson assumed the position of scheduler, a job in which his main duties included scheduling energy trades and handling scheduling problems for Dynegy. Dynegy characterized employees such as Carson as "jacks-of-

---

[1] There are 13 defendants-appellees in this matter, all of which are companies that are somehow related and share a common principal place of business in Houston, Texas: (i) Dynegy, Inc., an Illinois corporation; (ii) Dynegy Holdings, Inc., a Delaware corporation; (iii) Dynegy Marketing and Trade, a Colorado general partnership; (iv) Dynegy Power Corp., a Delaware corporation; (v) DMT Holdings, Inc., a Delaware corporation; (vi) Dynegy G.P., Inc., a Delaware corporation; (vii) BG Holdings, Inc., a Delaware corporation; (viii) Dynegy Upper Holdings, a Delaware limited liability company; (ix) Dynegy Holding Company, L.L.C., a Delaware limited liability company; (x) Dynegy Power Market, a Texas corporation; (xi) DMT L.P., L.L.C., a Delaware limited liability company; (xii) DMT G.P., L.L.C., a Delaware limited liability company; and (xiii) DMT Holdings, L.P., a Delaware limited partnership.

2

all-trades" whose duties included trading and scheduling.

While working as a scheduler, Carson created 24HA, which allows its users to create a large amount of "bids," which are offers to sell electrical power and ancillary services, in an error-free fashion and causes those bids to be submitted to the appropriate website for processing.[2] Carson contends that he created 24HA to impress management and to get promoted to the position of trader. It is not disputed that Carson created 24HA by himself[3] and largely on his own time away from the office, although uncontroverted record evidence indicates that he altered and modified the worksheet while at work. Carson also informed his colleagues at Dynegy about the 24HA worksheet and supported its firm-wide application. Carson, furthermore, allowed multiple individuals to access the password for 24HA. It is also undisputed that Carson encouraged even those with whom he did not work closely to adopt and modify 24HA, and to prepare a worksheet derivative of it. And, despite Carson's claim that his co-workers knew that 24HA was his program, he admitted that he never explicitly told anyone that his program could not be modified

_____

[2] Dynegy argues that all its employees were encouraged to improve processes and that the 24HA program was therefore a work-for-hire belonging to Dynegy. Carson, however, stated both in an affidavit and in a deposition that he was never told to improve Dynegy's processes. The district court determined that it would not be appropriate to consider Carson's affidavit, pursuant to the theory that a party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony. Nevertheless, Carson's deposition testimony does indicate that he was never told to improve processes. Accordingly, the affidavit does not contradict Carson's deposition. And, even if Carson's affidavit should not have been considered, Carson still has given testimony that he was not told to improve Dynegy's processes. The district court chose not to use this testimony because it deemed Carson's deposition testimony "evasive" and "nearly incomprehensible." Despite the deposition's cryptic nature, Carson did indicate that he was not told to improve processes. Accordingly, the evidence that Carson was instructed to improve Dynegy's processes is not uncontroverted.

[3] There is evidence that 24HA is based on an earlier program made by Dynegy workers not involved with this litigation.

3

or used unless he was present, and he never appeared to correct the impression among some of Dynegy's employees that 24HA was a team-created project.

Because of Carson's high performance on the job, which was at least in part due to his role in implementing the 24HA worksheet, Carson was (i) nominated for a company award consisting of a monetary prize, (ii) earmarked to receive an annual end-of-year bonus, and (iii) recommended for a promotion. Carson, however, never received these benefits, as he was soon terminated for violating company policy in a matter unrelated to this litigation. Despite Carson's firing, Dynegy continued to use the 24HA worksheet.

Only upon his termination did Carson begin concerning himself with Dynegy's use of 24HA. More than eight months after his discharge and after allegedly discovering that Dynegy still was using 24HA, Carson wrote a letter to Dynegy demanding that the company "immediately discontinue its unauthorized use of my program" and requesting that Dynegy "return all copies" of the worksheet. Dynegy responded that 24HA was its property, as it was developed by Carson in the course and within the scope of his employment. A year following his initial letter, Carson again demanded return of the 24HA worksheet; Dynegy responded to this correspondence by again asserting its ownership rights of 24HA and refusing to provide hard copy print-outs of the program.

Carson then initiated the instant lawsuit, seeking the following:

> (i)     a declaratory judgment stating that Carson owns all copyrights in the 24HA worksheet and that the program is not a work-for-hire, as identified in 17 U.S.C. § 101;
>
> (ii)    a determination that Dynegy's use of 24HA infringes Carson's copyrights in violation of 17 U.S.C. § 101, *et seq.*;

4

(iii) a determination that the 24HA worksheet is not a "joint work" under 17 U.S.C. § 101;

(iv) a holding that if 24HA is determined to be a joint work, Carson is entitled to an accounting of his share of the profits relating to its use;

(v) a determination that Dynegy illegally converted (a) tangible copies of the 24HA program and (b) proceeds earned from use of the worksheet.

At the close of discovery, Dynegy filed a motion for summary judgment, to which Carson responded. Dynegy filed a reply and Carson sought leave to file a sur-reply. The district court granted Carson's motion for leave to file a sur-reply, though it made clear that Carson was not permitted to add to the summary judgment evidence. Despite this instruction, the district court determined that Carson's sur-reply did attempt to add to the summary judgement record. Accordingly, the district court refused to consider any offending portions of the sur-reply.

After considering the parties' memoranda and the summary judgment evidence as a whole, the district court held that even if Carson owned 24HA, Dynegy had acquired a nonexclusive implied license to use the worksheet. Furthermore, the district court held that such a license was irrevocable because it was supported by consideration, namely, Carson's nomination for the company award consisting of a monetary prize, selection to receive an annual bonus, and recommendation for a promotion.[4] The district court noted further that it was immaterial that Carson never received or enjoyed the benefits of the supposed consideration. In the alternative, the district court held that Carson was estopped from filing his infringement claim against Dynegy for its use of the 24HA worksheet. Because of its rulings on the licensing and estoppel issues, the

---

[4] The district court did not adopt Dynegy's contention that Carson's continued employment constituted sufficient consideration for 24HA. Carson, the district court noted, was an at-will employee, so consideration based on such employment would be merely illusory.

5

district court believed it was unnecessary to address the ownership issue. Furthermore, the

district court held that Carson's conversion claim was preempted by federal copyright law.

Carson now appeals these determinations of the district court.

## II.

We review a grant of summary judgment *de novo*. *Young v. Equifax Credit Info. Servs.*
*Inc.*, 294 F.3d 631, 635 (5th Cir. 2002). "Summary judgment is proper if, after adequate

opportunity for discovery, the pleadings, depositions, answers to interrogatories, and admissions

on file, together with any affidavits filed in support of the motion, show that there is no genuine

issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

*Id.* The moving party bears the burden of pointing to an absence of evidence to support the

nonmoving party's case, *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), and we will uphold

a grant of summary judgment where the nonmovant is unable, in turn, to point to any evidence in

the record that would sustain a finding in the nonmovant's favor on any issue on which he bears

the burden of proof at trial. *Id.* at 321-23.

## III.

### A. *Irrevocable nonexclusive implied license*

Carson argues that the district court erred in holding that the parties' conduct created an

irrevocable, nonexclusive implied license. Specifically, he disputes the district court's holdings

that (i) a nonexclusive implied license was created;[5] (ii) the license was unlimited in scope; and

---

[5] It is well-established in this circuit that a nonexclusive implied license need not be
evidenced by a writing; rather, such a license may be implied from conduct or granted orally.
*Lulirama Ltd., Inc. v. Axcess Broadcast Svs., Inc.*, 128 F.2d 872, 879 (5th Cir. 1997) ("While the
Copyright Act requires that exclusive licenses be evidence by a writing, no such writing
requirement applies to nonexclusive licenses."). As the existence of a license authorizing the use

(iii) the license was irrevocable. Analysis of the last of these three determinations is sufficient to conclude that the district court erred.

We turn first to Carson's argument that even if a nonexclusive implied license to use 24HA had been created, such a license was not irrevocable and, indeed, was revoked by Carson. Specifically, Carson asserts that even if Dynegy had a license to use 24HA, that license was revoked upon Carson's demanding the return of the 24HA worksheet after his termination. It is settled that a "nonexclusive license may be irrevocable if supported by consideration." *Lulirama Ltd., Inc. v. Axcess Broadcast Servs., Inc.*, 128 F.3d 872, 882 (5th Cir. 1997).[6] And, "[t]his is so because a nonexclusive license supported by consideration is a contract." *Id.* (citations omitted). Assuming, *arguendo*, that a nonexclusive license was created, whether such a license was irrevocable rests solely with whether Carson received consideration.

At summary judgment, the district court rejected Dynegy's claims that Carson's continued at-will employment constituted sufficient consideration, as such employment—which Dynegy was free to terminate at any time—was merely an illusory promise. The district court, however, was persuaded that the consideration requirement was satisfied by Dynegy's (i) nominating Carson for a company award consisting of a monetary prize, (ii) planning to award Carson with an annual end-of-year bonus, and (iii) recommending Carson for a promotion. The district court determined

---

of copyrighted material is an affirmative defense to an allegation of infringement, Dynegy bears the burden of proving that such a license exists. *Lulirama*, 128 F.3d at 884 (citing *CMS Software Design Sys., Inc. v. Info Designs, Inc.*, 785 F.2d 1246, 1248 (5th Cir. 1986)).

[6] This principle finds support both from scholars and among our sister circuits. *See* 3 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 10.02[B][5] (2002); *I.A.E., Inc. v. Shaver*, 74 F.3d 768, 772 (7th Cir. 1996); *Avtec Sys., Inc. v. Peiffer*, 21 F.3d 568, 574 n.12 (4th Cir. 1994); *Keane Dealer Services, Inc. v. Harts*, 968 F. Supp. 944, 947 (S.D.N.Y. 1997); *Johnson v. Jones*, 885 F. Supp. 1008, 1012 n.6 (E.D. Mich. 1995).

that it was immaterial that Carson never received the company award payment, annual bonus, or promotion, because he would have received these benefits had he not been fired due to circumstances and events unrelated to this litigation.

We decline to adopt the district court's conclusion that the monetary award, annual bonus, and promotion, none of which Carson received, were sufficient to establish consideration under *Lulirama*. To determine whether such non-received benefits can be deemed consideration in the context of an employee-at-will relationship, we examine Texas law.[7] Under Texas contract law,

> [a]t-will employees may contract with their employers on any matter except those which would limit the ability of either employer or employee to terminate the employment at will. Consideration for a promise, by either the employee or the employer in an at-will employment, cannot be dependent on a period of continued employment. Such a promise would be illusory because it fails to bind the promisor who always retains the option of discontinuing employment in lieu of performance. (Citations omitted.) When illusory promises are all that support a purported bilateral contract, there is no contract. In short, we hold that "otherwise enforceable agreements" can emanate from at-will employment so long as the consideration for any promise is not illusory.

*Light v. Centel Cellular Co.*, 883 S.W.2d 642, 644-45 (Tex. 1994); *accord Kadco Contract Design Corp. v. Kelly Servs.*, 38 F. Supp. 2d 489, 495-96 (S.D. Tex. 1998). Here, the supposed consideration, eligibility for various cash awards and promotion, were dependent upon Carson's continued employment with Dynegy. When Carson was terminated, he was disqualified from receiving this putative consideration. Dynegy was not bound by any of these supposed promises because it could—and did—discontinue Carson's employment at its discretion, thereby

---

[7] We apply Texas law because "[t]he district court in this case applied Texas law and the parties do not dispute the propriety of that approach...." *Guaranty Nat. Ins. Co. v. Azrock Industries Inc.*, 211 F.3d 239, 243 (5th Cir. 2000) (citing *N.K. Parrish, Inc. v. Southwest Beef Indus. Corp.*, 638 F.2d 1366, 1370 n.3 (5th Cir. 1981)).

unilaterally revoking its promises. And, such illusory promises are, as a matter of law, insufficient to constitute adequate consideration. *See Light*, 883 S.W.2d at 644-45.

Accordingly, as consideration was not present, any license ostensibly granted to Dynegy was revocable by Carson. Carson, of course, did revoke this license by complaining to Dynegy of its use of 24HA and by filing this lawsuit. *See, e.g., Keane Dealer Services, Inc. v. Harts*, 968 F. Supp. 944, 947 (S.D.N.Y. 1997) (holding that issuance of a lawsuit is sufficient to constitute revocation of a license). As any license obtained by Dynegy was revocable, and clearly revoked by Carson, we need not address whether a nonexclusive implied license was even created or the scope of such a license.

## 2. *Estoppel*

Even if Dynegy has no irrevocable license to use 24HA, Carson nevertheless is estopped from the instant infringement claim, as the district court appropriately recognized. Although there is no on-point circuit authority articulating the elements of estoppel as a defense to a copyright infringement allegation, a consensus has developed that a copyright defendant must prove four conjunctive elements to establish estoppel in such cases:

(1)     the plaintiff must know the facts of the defendant's infringing conduct;
(2)     the plaintiff must intend that its conduct shall be acted on or must so act that the defendant has a right to believe that it is so intended;
(3)     the defendant must be ignorant of the true facts; and
(4)     the defendant must rely on the plaintiff's conduct to its injury.

*See* 4 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 13.07 (2002) ("Nimmer").

Federal courts considering the doctrine of estoppel in copyright cases have adopted and applied

9

this four-part test. *See, e.g., Hampton v. Paramount Pictures Corp.*, 279 F.2d 100, 104 (9th Cir.), *cert. denied*, 364 U.S. 882 (1960); *Quinn v. City of Detroit*, 23 F. Supp. 2d 741, 753 (E.D. Mich. 1998); *National Business Lists, Inc. v. Dun & Bradstreet, Inc.*, 552 F. Supp. 89, 97 (N.D. Ill. 1982); *Schuchart & Associates, Professional Engineers, Inc. v. Solo Serve Corp.*, 540 F. Supp. 928, 941 (W.D. Tex. 1982); *Lottie Joplin Thomas Trust v. Crown Publishers*, 456 F. Supp. 531, 535 (S.D.N.Y. 1977), *aff'd*, 592 F.2d 651 (2d Cir. 1978). Furthermore, it is accepted that estoppel may be accomplished by a plaintiff's silence and inaction. 4 Nimmer § 13.07 (citing *Quinn*, 23 F. Supp. 2d at 753; *National Business Lists*, 552 F. Supp. at 97).

Carson challenges that elements (i), (iii), and (iv) of the estoppel test have been satisfied by uncontroverted evidence. Specifically, Carson argues that he did not know that Dynegy continued to use 24HA after his termination until shortly before he wrote his first letter to Dynegy, asserting that he owned the worksheet and asking that Dynegy cease using it. In essence, then, Carson asserts that his knowledge of Dynegy's use of 24HA prior to his termination is not relevant; rather, he claims that Dynegy's conduct only after Carson's termination is relevant with respect to the first estoppel element. Furthermore, Carson argues that there is a factual dispute regarding whether Dynegy knew that Carson created and had rights in 24HA. Finally, Carson argues that Dynegy's receipt of Carson's letter precludes the argument that Dynegy could establish any reasonable detrimental reliance. This final argument is again dependent upon Carson's assumption that only the state of affairs after the termination—rather than the state of affairs before it—are relevant to the estoppel analysis.

As an initial matter, there is no factual dispute that Dynegy was ignorant of the facts as alleged by Carson. *See* 4 Nimmer § 13.07. While Carson argues that it was widely known that he

10

owned the 24HA worksheet, the record militates to the contrary. Indeed, there is evidence that

Carson encouraged the adaptation, modification, and preparation of a derivative program for

other Dynegy employees to use. Carson, moreover, permitted multiple persons to access the

password for 24HA. Despite Carson's claim that his co-workers knew that 24HA was his

property, he admitted that he never explicitly told anyone that the worksheet could not be

modified or used unless he was present and he never appeared to correct the impression among

some of Dynegy's employees that 24HA was a team-created program.

All that now stands in the way of endorsing the district court's estoppel determination is

Carson's argument that it was improper to consider events prior to his termination in the analysis

of estoppel elements (i) and (iv).[8] While there is no controlling case on the matter, one district

court, when confronted with similar facts, did not hesitate to consider the parties' conduct during

the course of the plaintiff's employment to confront the estoppel issue. *See Quinn*, 23 F. Supp.

2d at 753. In *Quinn*, the plaintiff, a staff attorney employed by the City of Detroit, created a

computer program designed to help the office run more efficiently. *Id.* at 743. Although the

plaintiff consented to the office's use of the program for a number of years, he attempted to

withdraw such consent after other employees at the office attempted to modify the program

without first obtaining permission. *Id.* at 743-44. And, this attempt to keep the City from using

the program occurred during the time that the plaintiff was employed by the City. *Id.* After citing

to the four-factor estoppel test, the district court determined that the plaintiff was estopped from

---

[8] These elements are that the party to be estopped must know the facts of the defendant's infringing conduct and that the defendant must rely on the plaintiff's conduct to his injury. *See* 4 Nimmer § 13.07. It is clear from the record that both of these elements are satisfied, provided it is proper to consider events prior to Carson's termination.

11

pursuing an infringement claim because the City had, for years, relied on the plaintiff's permission to use the program and had become dependent upon it, abandoning its prior system. *Id.* at 753. Thus, the court held that at some point between the time that the City began using the program and the time that the plaintiff first attempted to assert his rights approximately three years later, the plaintiff became estopped from withdrawing his consent because of the City's reliance and the plaintiff's past grant of permission. *Id.* Thus, if *Quinn* were controlling, Dynegy's estoppel argument would prevail, as *Quinn* clearly contemplates consideration of the parties' conduct during the time in which the plaintiff is employed by the defendant. Indeed, all the relevant conduct in *Quinn* was "pre-termination," as the plaintiff there had not been terminated.

Yet, as *Quinn* is not binding precedent, we are not obliged to accept its reasoning if we deem it faulty. An analysis of the opinion in *Quinn*, however, demonstrates its virtues. Indeed, *Quinn* permits courts to consider the relationship of employers and workers, such as the plaintiff in that case and Carson in this matter, during the course of employment to determine whether estoppel should be an available defense. *Id.* at 753. It further holds that estoppel can be established while a putative copyright holder is still employed by the alleged infringer. *Id.* This rule is sound, as the theory of estoppel is based on reasonable reliance. *See Florida Dept. of Ins. v. Chase Bank of Texas Nat. Ass'n*, 274 F.3d 924, 933 (5th Cir. 2001). And, such reliance can develop—indeed, *did* develop—while a putative copyright holder is employed by an alleged infringer. The rule in *Quinn* rightly prohibits an alleged copyright owner from maintaining an infringement claim against his employer, after permitting that employer to use his creation to adapt existing procedures or systems. Put another way, whether a putative copyright owner remains with his employer is simply not relevant to the estoppel analysis *if* the conduct of the

12

supposed owner and his employer during the period of employment is sufficient to establish

estoppel. Thus, although we recognize that Carson's claims of copyright infringement are limited

to the time period after his termination, we nevertheless hold that it is proper to consider Carson's

conduct during the course of his employment at Dynegy to establish the defense of estoppel. *See*

*Quinn*, 23 F. Supp. 2d at 753.[9] Given the undisputed facts of this case, the conduct of the parties

---

[9] In opposition to a determination of estoppel, Carson relies chiefly on a trio of cases from the Southern District of New York, *Peer Int'l Corp. v. Luna Records, Inc.*, 887 F. Supp. 560, 567 (S.D.N.Y. 1995), *Basic Books, Inc. v. Kinko's Graphics Corp.*, 758 F. Supp. 1522, 1540 (S.D.N.Y. 1991), and *Steinberg v. Columbia Pictures Indus., Inc.*, 663 F. Supp. 706, 715-16 (S.D.N.Y. 1987). These three cases, of course, are not controlling and—unlike *Quinn*—lack factual similarity with the instant case. *Steinberg*, the earliest of the three cases, does not strengthen Carson's case. There, the district court held that the plaintiff's supposed silence and inaction regarding the defendant's infringing behavior should not give rise to estoppel because there was no existing relationship between the parties. *Steinberg*, 663 F. Supp. at 716. In the instant case, however, there was an clear relationship between Carson and Dynegy, *i.e.*, that of employer-employee. Thus, *Steinberg* is not applicable to the instant controversy and does not help Carson.

Carson cites to *Basic Books*, 758 F. Supp. at 1540, for the proposition that in order to satisfy the first element of estoppel, it would be necessary for Carson to have stated that he knew that Dynegy's actions constituted infringement as a matter of law. This argument is belied by the opinion in *Basic Books*; indeed, the court there did not require that the plaintiff be aware that the defendant's actions constituted infringement as a matter of law. *Id.* And, even if the court in *Basic Books* did hold as Carson asserts it did, we would decline to follow such a holding, as such a determination would be inconsistent with the bulk of cases on this issue. *See, e.g.,* 4 Nimmer § 13.07.

Finally, Carson attempts to rely on *Peer Int'l*, 887 F. Supp. at 567. In that case, which concerned the alleged infringement of copyrighted material on vinyl phonograph records, the court held that although the plaintiffs had knowledge of the defendants' infringing acts, the defense of estoppel failed, in part because the defendants failed to show detrimental reliance. Thus, the court held that defendants "cannot escape the fact that [they] continued to make and distribute the infringing phonographs for at least six months after suit was filed when any claim of detrimental reliance should have ended." *Id.* Carson argues that because Dynegy continued to use 24HA and, arguably, introduced a derivative work after this lawsuit was filed, Dynegy cannot likewise claim estoppel. Yet, Dynegy's estoppel defense, unlike that of the defendants in *Peer Int'l*, matured long before Carson was terminated. *See Quinn*, 23 F. Supp. 2d at 753. Furthermore, *Peer Int'l* is factually dissimilar to the instant case, as it concerned the manufacture of vinyl records, *Peer Int'l*, 887 F. Supp. at 567, not the on-going use of a computer program on which the user had relied for a substantial period of time.

13

before Carson's termination was sufficient to establish estoppel. *See* n.8, *supra*. Accordingly, the district court properly determined that Carson is estopped from pursuing his infringement claim against Dynegy.

*3. Conversion*

Carson's complaint also included a claim of conversion,[10] wherein Carson alleged that Dynegy wrongfully withheld 24HA in its tangible forms and failed to provide Carson with the proceeds generated from the worksheet's use. The district court held that Carson's conversion claim was preempted by federal copyright law, and speculated that even if it were not preempted, the claim "would likely fail." On appeal, Dynegy repeats the district court's conclusion without citing to any cases or statutes.

There is well-settled precedent to determine whether a state-law claim is preempted by federal copyright law. *See Daboub v. Gibbons*, 42 F.3d 285, 288-89 (5th Cir. 1995); 17 U.S.C. § 301. Indeed, this circuit has held that both prongs of a two-factor test must be satisfied for preemption to occur. First, the claim is examined to determine whether it falls "within the subject matter of copyright" as defined by 17 U.S.C. § 102. *Daboub*, 42 F.3d at 289 (internal quotation marks omitted).[11] And second, "the cause of action is examined to determine if it protects rights

---

[10] We apply Texas law to Carson's conversion claim. *See* n.7, *supra*.

[11] Section 102 of the Copyright Act provides that
>    (a) Copyright protection subsists, in accordance with this title, in original works of authorship fixed in any tangible medium of expression, now known or later developed, from which they can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device. Works of authorship include the following categories:
>
>       (1) literary works;
>       (2) musical works, including any accompanying words;

14

that are 'equivalent' to any of the exclusive rights of a federal copyright, as provided in 17 U.S.C. § 106." *Id.* (citing *Gemcraft Homes, Inc. v. Sumurdy*, 688 F. Supp. 289, 294 (E.D. Tex. 1988)).

Carson's conversion claim consists of two allegations: (i) that Dynegy wrongfully withheld 24HA in its tangible forms and (ii) that Dynegy failed to provide Carson with the proceeds generated from use of 24HA. Carson's second allegation involves only intellectual property rights, *i.e.*, income earned from Dynegy's alleged copyright infringement, rather than rights regarding physical property. As such, this allegation is outside the scope of Texas conversion law, which concerns only physical property. *See Waisath v. Lack's Stores*, 474 S.W.2d 444, 447 (Tex. 1971).

We continue, then, to Caron's allegation that Dynegy wrongfully withheld 24HA in its tangible forms. This conversion allegation is not preempted because the second *Daboub* prong—that of equivalency—is plainly not satisfied. The test for evaluating the equivalency of rights is commonly referred to as the "extra element" test. *Alcatel USA, Inc. v. DGI Technologies, Inc.*, 166 F.3d 772, 787 (5th Cir. 1999). This test requires that if "one or more qualitatively different elements are required to constitute the state-created cause of action being

---

> (3) dramatic works, including any accompanying music;
> (4) pantomimes and choreographic works;
> (5) pictorial, graphic, and sculptural works;
> (6) motion pictures and other audiovisual works;
> (7) sound recordings; and
> (8) architectural works.
>
> (b) In no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work.

17 U.S.C. § 102.

asserted, then the right granted under state law does not lie within the general scope of copyright, and preemption does not occur." *Id.* (internal quotation marks omitted). Under Texas law, conversion of physical property requires a showing of an "unauthorized and wrongful assumption and exercise of dominion and control over the personal property of another, to the exclusion of or inconsistent with the owner's rights." *Waisath*, 474 S.W.2d at 447. The elements of conversion of physical property are, therefore, qualitatively different than those of copyright infringement. *See also Pritikin v. Liberation Publs., Inc.*, 83 F. Supp. 2d 920, 923 n.1 (N.D. Ill. 1999) (stating that "§ 301(a) will preempt a conversion claim 'where the plaintiff alleges only the unlawful retention of its intellectual property rights and not the unlawful retention of the tangible object embodying its work.'") (quoting Paul Goldstein, *Copyright, Patent, Trademark and Related States Doctrines* 777 (3d ed. 1993)); 1 Nimmer § 1.01[B][1][i] (noting that conversion is a tort that relates to interference of tangible rather than intangible property and is not preempted by the Copyright Act); *cf. Daboub*, 42 F.3d at 289-90 (holding that a conversion claim was preempted by the Copyright Act where the claim was that the defendant improperly copied a song, which is necessarily intangible). Thus, as the second *Daboub* prong cannot be satisfied, Carson's conversion claim that Dynegy wrongfully withheld 24HA in its tangible forms is not preempted by Section 301 of the copyright act.[12] Furthermore, there is no colorable claim that conflict

---

[12] The district court relies solely on *Barbour v. Head*, 178 F. Supp. 2d 758 (S.D. Tex. 2001), for the proposition that state law claims of conversion are preempted by federal copyright law. *Barbour*, however, did not address conversion claims regarding physical, tangible property, which is in issue here. *Barbour*, 178 F. Supp. 2d at 759-60. Accordingly, *Barbour* is not applicable to Carson's allegation that Dynegy wrongfully withheld tangible copies of 24HA.

Equally unpersuasive is Dynegy's similar argument that it cannot be "guilty" of converting a worksheet that it had a right to use. Indeed, Carson's first conversion allegation concerns tangible property, not intellectual property. Even if it is assumed, *arguendo*, that Dynegy does own a copyright in 24HA, such intangible rights would not preclude a claim of conversion

16

preemption applies in this matter as Texas's protecting rights in physical property in this way does not "obstruct[] the accomplishment of the full purposes and objectives of" the Copyright act. *Brown v. Ames*, 201 F.3d 654, 659 (5th Cir. 2000). We therefore determine that Carson's conversion allegation that Dynegy wrongfully withheld tangible copies of 24HA is not preempted. Accordingly, this claim must be remanded to the district court for further proceedings not inconsistent with this opinion.[13]

### 4. Declaratory Judgement

By issuing a ruling in favor of Dynegy on the infringement issue, the district court determined that it was unnecessary to determine ownership of 24HA. Nevertheless, Carson did ask the district court for declaratory relief on the ownership issue and resolution of the infringement issue does not resolve Carson's ownership claim. Thus, it is proper to remand the ownership question to the district court so that it may determine ownership of 24HA by analyzing whether 24HA was a work prepared "within the scope of [Carson's] employment." 17 U.S.C. § 101; *see also Restatement (Second) of Agency* § 228 (1958).

**IV.**

---

regarding tangible property. To make an appropriate comparison, even if counter-culture author Abbie Hoffman owns the copyright to his hippie treatise entitled *Steal This Book*, such intellectual property ownership would not clothe the writer with authority to march into the local Barnes & Noble and take a copy without paying for it. *See* Abbie Hoffman, Steal This Book (Four Walls Eight Windows 2002) (1971).

[13] In a footnote to the order granting summary judgment, the district court observed that Carson had now been given a copy of the 24HA worksheet and that Dynegy had ceased using it in 2000, when Carson asserted ownership. Thus that court indicated that Carson's conversion claim "would likely fail even if it were not preempted." However, because the district court did not make a definitive ruling on this issue, it is not properly before us on this appeal.

17

Accordingly, we affirm the district court's grant of summary judgment in favor of Dynegy and against Carson with respect to Carson's infringement claim. Yet, we reverse the district court's determination that federal copyright law preempts Carson's conversion claim and remand this claim for proceedings not inconsistent with this opinion. Finally, we remand the issue of ownership to the district court.[14]

---

[14] After oral argument, Dynegy filed a motion for leave to file a post-argument brief, to which Carson responded. As the post-argument brief was unnecessary to our rendering this opinion, we dismiss Dynegy's motion as moot.