# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 17, 2012

No. 11-10939

Lyle W. Cayce
Clerk

GLOBERANGER CORPORATION,

Plaintiff-Appellant

v.

SOFTWARE AG; SOFTWARE AG UNITED STATES OF AMERICA, INCORPORATED; SOFTWARE AG, INCORPORATED; NANIQ SYSTEMS, L.L.C.; MAIN SAIL, L.L.C.,

Defendants-Appellees

Appeal from the United States District Court
for the Northern District of Texas

Before DAVIS, OWEN, and SOUTHWICK, Circuit Judges.

LESLIE H. SOUTHWICK, Circuit Judge:

GlobeRanger alleged a number of Texas claims against a group of software companies in state court. The defendants removed the suit to federal court and obtained a dismissal from the district court on the basis that all of GlobeRanger's claims were preempted by the Copyright Act. Because GlobeRanger plausibly pled more than copying of a tangible medium of expression, dismissing the case at this stage of the litigation was in error. We REVERSE and REMAND.

No. 11-10939

FACTUAL AND PROCEDURAL BACKGROUND

The plaintiff GlobeRanger developed a passive radio frequency identification (RFID) system for commercial use. That party describes RFID using an analogy to a grocery store. Instead of scanning each item individually with a system such as a bar code scanner, RFID permits items to pass through an area with an RFID reader and data on those items' movement will be registered. Another example of RFID use is in enabling motor-vehicle drivers to pay tolls at highway speeds as their cars pass under RFID readers.

In order to utilize RFID technology, there must be a system that optimizes the placement of physical tags on items and locates RFID readers to read those tags as the products move. GlobeRanger's petition alleges the system is important because "RFID tags and readers provide automatic acknowledgment that 'something' has crossed the reader, but the Business Processes and software associated with those Business Processes tell the RFID System how to recognize what the 'something' is, where it came from, where it is going, how long it took to get there, and most importantly what the RFID System should do about it."

GlobeRanger has a generic RFID software platform named iMotion. GlobeRanger utilizes this software along with a customized physical placement of RFID tags, readers, and servers for each customer in order to deploy an RFID system.

Defendant Software AG is a parent company. Software AG United States of America, Inc., and Software AG, Inc. are its subsidiaries. Software AG owns software entitled "webMethods" that GlobeRanger characterizes as middleware. Middleware helps different computer systems work together. GlobeRanger uses the example of a company using middleware to target its marketing by connecting its customer database with its ordering system. Another example would be connecting an RFID database with a procurement database to automatically order new supplies as they leave a warehouse.

2

No. 11-10939

In 2004, the Department of Defense mandated implementation of RFID technology at each of its agencies.  GlobeRanger obtained some contracts to help implement this DoD mandate.  Defendants Naniq Systems, L.L.C. and Main Sail, L.L.C. are information technology services companies that served as subcontractors on GlobeRanger's military contracts.

In 2008, the Navy sought to implement a new RFID architecture. GlobeRanger bid on this contract, but it lost.  It alleges a number of reasons why. GlobeRanger alleges that an employee of Naniq had an improper relationship with the Navy contracting officer in charge of soliciting bids, Bob Bacon.[1] GlobeRanger alleges that Naniq and Main Sail used their inside position to steal GlobeRanger's technology and that along with Bacon passed along this technology to Software AG.  One basis stated in the petition to support these claims stems from Bacon's participation on a panel discussion at an RFID conference.  A questioner asked if the Navy could trust Software AG's "webMethod's between the reads and the business systems."  Bacon answered that the Navy "reverse engineered code from GlobeRanger."

GlobeRanger also alleges that Software AG, in order to gain a competitive advantage, misrepresented that Software AG developed the Navy's RFID system.  It also alleges that the employee who had an improper relationship with Bacon misrepresented that she was a compliance officer with the Navy, which she was not.

GlobeRanger sued the defendants in Texas state court. Its petition alleged five counts: (1) misappropriation of trade secrets; (2) conversion; (3) unfair competition; (4) conspiracy; and (5) tortious interference.  The defendants removed to the United States District Court for the Northern District of Texas. They alleged the district court had jurisdiction because GlobeRanger's claims

---

[1] Bacon's relationship with that employee ended in a manner that resulted in the Navy placing him on administrative leave.

3

were preempted by the Copyright Act. *See* 28 U.S.C. § 1338. The defendants also moved to dismiss GlobeRanger's petition. GlobeRanger moved to remand to state court and opposed the defendants' motion to dismiss. On August 11, 2011, the district court denied GlobeRanger's motion to remand. On August 15, the district court granted the defendants' motion to dismiss. GlobeRanger timely appealed.

## DISCUSSION

This court reviews *de novo* dismissals for failure to state a claim. *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011). "Dismissal is appropriate only if the complaint fails to plead enough facts to state a claim to relief that is plausible on its face." *Id.* (quotation marks and citation omitted).

It is under this standard of review that we first decide that the complete preemption doctrine applies in copyright preemption cases. Next, we conclude at least some of GlobeRanger's claims are not preempted at this stage. Finally, we determine that this case may remain in federal court based on the likely preemption of GlobeRanger's conversion claim.

### I.     *Jurisdiction*

The defendants removed GlobeRanger's state court action on the basis that, even though GlobeRanger did not plead any copyright claims, its claims were preempted by the Copyright Act, creating subject-matter jurisdiction in the federal courts. 28 U.S.C. § 1338. It is "settled law that a case may not be removed to federal court on the basis of a federal defense, including the defense of pre-emption." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987). "There does exist, however, an 'independent corollary' to the well-pleaded complaint rule, known as the 'complete pre-emption' doctrine. On occasion, the Court has concluded that the pre-emptive force of a statute is so 'extraordinary' that it converts an ordinary state common-law complaint into one stating a federal

claim for purposes of the well-pleaded complaint rule." *Id.* (quotation marks and citations omitted). "The question in complete preemption analysis is whether Congress intended the federal cause of action to be the exclusive cause of action for the particular claims asserted under state law." *New Orleans & Gulf Coast Ry. Co. v. Barrois*, 533 F.3d 321, 331 (5th Cir. 2008). Jurisdiction is proper if Congress intended there be an exclusive federal cause of action. *Id.*

This circuit has yet to determine whether the Copyright Act is the type of "extraordinary" statute that the Court had in mind in *Caterpillar*. The Fourth Circuit, in a thoroughly reasoned opinion, has concluded that the Copyright Act is such a statute. *Rosciszewski v. Arete Assocs., Inc.*, 1 F.3d 225, 232-33 (4th Cir. 1993). The court reasoned that a "grant of exclusive jurisdiction to the federal district courts over civil actions arising under the Copyright Act, combined with the preemptive force of § 301(a), compels the conclusion that Congress intended that state-law actions preempted by § 301(a) of the Copyright Act arise under federal law." *Id.* at 232. Thus, "the preemptive force of § 301(a) of the Copyright Act transforms a state-law complaint asserting claims that are preempted by § 301(a) into a complaint stating a federal claim for purposes of the well-pleaded complaint rule." *Id.* at 232-33.

The Second and Sixth Circuits adhere to the Fourth Circuit's approach. "There is increasing authority for the proposition that § 301(a) of the Copyright Act completely preempts the substantive field."[2] 13D Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3582, at 742 (3d ed. 2008); *see also Ritchie v. Williams*, 395 F.3d 283, 285 (6th Cir. 2005); *Briarpatch Ltd.,*

---

[2] In an unpublished opinion, the Third Circuit concluded that in the context of the state-law claim at issue there was no copyright preemption. *Bd. of Chosen Freeholders of Cnty. of Burlington v. Tombs*, 215 F. App'x 80, 82 (3d Cir. 2006). One commentator notes, citing *Tombs*, that the Third Circuit has "rejected complete preemption in the copyright context." Copyright Litigation Handbook § 10:1 (2d ed.). It is correct that *Tombs* rejected the application of preemption to a specific cause of action. *Tombs* did not reject, however, complete preemption generally under the Copyright Act.

*L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 304-06 (2d Cir. 2004). We hold that Section 301(a) of the Copyright Act completely preempts the substantive field.

The real jurisdictional dispute in this case is whether the Copyright Act preempts any of GlobeRanger's claims. If it does, then the district court properly exercised jurisdiction over this case. Further, if it preempts all of them, then the case should be dismissed. If it plausibly preempts some but not all, however, then the case can continue in federal court. We now discuss preemption.

## II.    *Copyright Preemption*

The parties agree on the relevant standard. They dispute its application. "Copyright ownership is shown by proof of originality and copyrightability in the work as a whole and by compliance with applicable statutory formalities." *Computer Mgmt. Assistance Co. v. Robert F. DeCastro, Inc.*, 220 F.3d 396, 400 (5th Cir. 2000) (quotation marks and citation omitted). "Computer programs are entitled to copyright protection." *Id.* For a state-law claim to be preempted by the Copyright Act, "both prongs of a two-factor test must be satisfied . . . . First, the claim is examined to determine whether it falls 'within the subject matter of copyright' as defined by 17 U.S.C. § 102." *Carson v. Dynegy, Inc.*, 344 F.3d 446, 456 (5th Cir. 2003) (citation omitted). "And second, the cause of action is examined to determine if it protects rights that are 'equivalent' to any of the exclusive rights of a federal copyright, as provided in 17 U.S.C. § 106." *Id.* (quotation marks and citation omitted).

### A.    *Copyright Subject Matter*

GlobeRanger argues that the subject matter of copyright is more limited than the claims it has brought. It relies in part on the source of copyright subject matter. *See* 17 U.S.C. § 102(b). That section states that "[i]n no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or

discovery." *Id.* GlobeRanger argues that its RFID system is precisely what Section 102(b) is describing, a "process, system, method of operation." Section 102(b)'s exclusion of subject matter extends even if the excluded subject matter is embodied in a copyrightable work.

GlobeRanger further argues that its claims are indistinguishable from claims that the Northern District of Illinois held were excluded subject matter. *See Chicago Bd. Options Exch., Inc. v. Int'l Sec. Exch., LLC*, 06-CV-6852, 2007 WL 604984 (N.D. Ill. Feb. 23, 2007). In that case, the Chicago Board of Options Exchange sought to use not just the Dow Jones Index, which was within the subject matter of copyright, but the Board also intended to employ the "research and development used to create the Indexes," which was not within the copyright subject matter. *Id.* at *5. GlobeRanger argues that just because part of the defendants' improper conduct included unauthorized access to its software, not all of their conduct related to copyright subject matter. It argues this is analogous to Chicago Board's planned use of both the Indexes (within copyright) and R&D (not within copyright).

The defendants argue that "copyright protection extends not only to the literal elements of a program, i.e., its source code and object code, but also to its 'nonliteral' elements, such as the program architecture, 'structure, sequence and organization', operational modules, and computer-user interface." *Eng'g Dynamics, Inc. v. Structural Software, Inc.*, 26 F.3d 1335, 1341 (5th Cir. 1994), *opinion supplemented on denial of reh'g*, 46 F.3d 408 (5th Cir. 1995) (footnote omitted). They catalog cases standing for the proposition that a plaintiff may not recast copyrightable work simply as the ideas contained within that work. The defendants quote various parts of GlobeRanger's petition to support their argument that the allegations only pertain to the defendants copying the ideas and processes contained within GlobeRanger's iMotion software. They argue

that the RFID system GlobeRanger is discussing is no more than the "structure, sequence, and organization" this court was discussing in *Engineering Dynamics*.

We have noted that "as one moves away from the literal code to more general levels of a program, it becomes more difficult to distinguish between unprotectable ideas, processes, methods or functions, on one hand, and copyrightable expression on the other." *Id.* This difficulty has led us to conclude that some nonliteral aspect of computer programs are within the scope of copyright. *Id.* at 1342. That is not to say, however, that copyright protection sweeps so broadly as to encompass whole structures or systems of which software is only a part. To explain, we explore our precedent in greater depth.

In *Engineering Dynamics*, the plaintiff sought copyright protection of computer manuals and data cards associated with its software. *Id.* at 1339. Our discussion of the data cards is the more helpful part of the opinion for this case. The data cards provided input formats to use in categorizing data such that a computer program could utilize that data. *Id.* at 1339-40. The plaintiff alleged copying of its input formats. *Id.* at 1339. The plaintiff claimed that its copyrightable work was "several dozen input formats taken together . . . because they represent but one of many ways of expressing a mode of computerized structural analysis." *Id.* at 1342. We concluded that the nonliteral elements of input formats were copyrightable as expressive and did not fall under Section 102(b)'s "useful article exception." *Id.* at 1341-42. We noted at the time that the "[c]ourt decisions are, generously described, in a state of creative ferment concerning the methods by which nonliteral elements of computer programs may be identified and analyzed for copyrightability." *Id.* at 1341.

The crucial distinguishing fact between *Engineering Dynamics* and this case is that even at its broadest point *Engineering Dynamics* is about software. The current case contains plausible allegations that extend beyond software. For example, one part of GlobeRanger's petiton alleges that "Defendants could

see how GlobeRanger went about actually deploying on site, how it set up its readers, how it tagged its product, how it incorporated business process into the design of the warehouse, and how it had trained sailors."

We use two examples to show how seemingly analogous cases are still limited to specific expressions of computer programs and their nonliteral elements. One example is a data input card discussed in *Engineering Dynamics*. Data cards were essential in order for the computer program to be able to read the inputs and were protected under the copyright: "functional interfaces that directly teach or guide the user's independent decisions are more expressive than functional interfaces that lack these qualities." *Id.* at 1339.

Another example is a case in which we reviewed a copyright infringement claim over alleged copying of the software expression of a specific business model. *Kepner-Tregoe, Inc. v. Leadership Software, Inc.*, 12 F.3d 527, 531 (5th Cir. 1994). There, the plaintiff had licensed a computer program designed to assist in management decisions that contained "eight 'questions' or 'problem attributes' and five 'definitions' or 'processes.'" *Id.* The original authors of the program created a modified program, which retained the original questions and definitions, but added four new questions. *Id.* We concluded the new program was infringing because "[e]ven if each of the eight questions and five processes conveys *unprotectable ideas*, the specific words, phrases, and sentences selected to convey those ideas are *protectable expression*." *Id.* at 534. When reviewing a modified program, however, we classified as unprotectable both the "basic idea of a management training program" and "the more specific idea of training managers by asking them a series of questions about their decision-making landscape, and then-based on their answers-suggesting a preferred decision-making process." *Id.* at 535.

Even though the allegations in GlobeRanger's petition include copying of specific expressions, it has also alleged the copying of its business practices that

9

are not necessarily limited to specific expressions.  GlobeRanger's allegations plausibly establish copying of more than the types of copyrightable expressions we discussed in *Engineering Dynamics* and *Kepner-Tregoe.*

The defendants argue that GlobeRanger is merely recasting its copyrightable work as noncopyrightable subject matter.  The defendants are correct that district courts must be alert to artful pleading intended to bypass copyright preemption.  *See Alcatel USA, Inc. v. DGI Techs., Inc.*, 166 F.3d 772, 786 (5th Cir. 1999).  In *Alcatel*, the plaintiff alleged the defendant had misappropriated the "information" in its copyrighted firmware, software, and manuals.  *Id.*  We rejected this argument because "[w]ithout objection, the district court instructed the jury on [the defendant's] use of these *works*, and not specific pieces of information contained in them."  *Id.*  GlobeRanger's petition, although it discusses software, also makes claims not wholly limited to software. They are thus broader than the "works" in *Alcatel.*

We requested at argument that the defendants provide their best support for granting a motion to dismiss in this type of case as opposed to awaiting further factual development of the case.  They cite one of our recent unpublished cases as "granting a motion to dismiss state-law claim for conversion of computer software."  *See Real Estate Innovations, Inc. v. Hous. Ass'n of Realtors, Inc.*, 422 F. App'x 344, 350 (5th Cir. 2011).  Although their characterization is accurate, in that case the parties did not dispute that the allegations were within the scope of the Copyright Act, which is the factor we are currently resolving.  The other cases on which the defendants rely are unhelpful because they were also resolved on the second prong of the copyright preemption inquiry.  *See, e.g.*, *Briarpatch Ltd., L.P.*, 373 F.3d at 306.

To summarize, GlobeRanger alleges that it implements RFID solutions at client sites.  Those solutions include the types of procedures, processes, systems, and methods of operation that are excluded from copyright protection under

Section 102(b). These factual allegations, if proven true, would be outside of the subject matter of the Copyright Act and not preempted.

### B.    Copyright Equivalency – Conversion

Because we have concluded that at least part of the factual basis for GlobeRanger's claims may fall outside of the scope of copyright, we leave open the application of this holding to the remainder of the copyright preemption analysis on remand. If none of the claims were preempted, though, there would not be federal jurisdiction under the complete preemption doctrine. *Barrois*, 533 F.3d at 331. The best argument by the defendants for preemption is on GlobeRanger's conversion claim.

GlobeRanger argues that because Texas conversion law pertains to physical property, it is not equivalent to copyright protection. *See Carson*, 344 F.3d at 456. The defendants argue that this court has held that claims for conversion of intangible property are preempted. *See Daboub v. Gibbons*, 42 F.3d 285, 289-90 (5th Cir. 1995). GlobeRanger only mentions in a footnote of its brief that the defendants "converted tangible property." To support this argument, it refers to two paragraphs of its complaint pertaining to intangible property, such as where GlobeRanger places RFID readers. The allegations GlobeRanger identifies are not allegations relating to tangible property. Thus, for the purposes of jurisdictional analysis, the defendants make a sufficient argument to keep this case in federal court at the motion to dismiss stage. *See Carson*, 344 F.3d at 456; *Briarpatch*, 373 F.3d at 308.

To be clear, our conclusion on conversion is without prejudice to GlobeRanger's ability to prove its claim relates to physical property. For example, the second paragraph in the petition that it highlights alleges the defendants took the information they learned from observing GlobeRanger and "hooked it up to the GlobeRanger iMotion server." If, with the aid of a more developed record, the district court concludes that GlobeRanger's conversion

No. 11-10939

claim relates to physical property, a different analysis will be required. If, however, the district court concludes that neither the conversion claim nor any other is preempted, it will lack jurisdiction over this case.

CONCLUSION

We have only been presented with a question of copyright preemption at the motion to dismiss stage. The order of dismissal did not determine whether the complaint plausibly asserted state-law claims upon which relief can be granted. We thus reach only modest conclusions. First, GlobeRanger has pled factual allegations that at least in part fall outside of the scope of copyright. Further, the defendants have argued enough of a basis for preemption on GlobeRanger's conversion claim to stay in federal court.

REVERSED and REMANDED.