# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-10753

United States Court of Appeals
Fifth Circuit

**FILED**

June 30, 2015

Lyle W. Cayce
Clerk

SPEAR MARKETING, INCORPORATED,

      Plaintiff - Appellant

v.

BANCORPSOUTH BANK; ARGO DATA RESOURCE CORPORATION,

      Defendants - Appellees

———————————

Appeal from the United States District Court
for the Northern District of Texas

———————————

Before WIENER, SOUTHWICK, and GRAVES, Circuit Judges.

WIENER, Circuit Judge:

Plaintiff-Appellant Spear Marketing, Inc. ("SMI") brought various Texas state law claims against Defendants-Appellees BancorpSouth Bank ("BCS") and ARGO Data Resource Corp. ("ARGO") (collectively, "Defendants") in Texas state court. SMI's claims related to Defendants' alleged theft of trade secrets in connection with a software program developed and sold by SMI. Defendants removed the case to federal court on the basis of complete preemption by the Copyright Act.[1] The district court denied SMI's motion to remand and, after

---

[1] *See* 17 U.S.C. § 301(a).

No. 14-10753

discovery, granted Defendants' motion for summary judgment on the merits of the claims. SMI appeals both decisions. We affirm.

## I.     FACTS AND PROCEEDINGS

SMI is a small, family-run business that produces one product for the banking industry, a computer program called VaultWorks. VaultWorks helps banks manage their cash inventories so that each of their branches has the optimum supply of cash available on site. The program enables banks to identify surplus cash in vaults and ATMs, track daily cash inventory, and eliminate unnecessary cash deliveries to branch and ATM locations.

Although VaultWorks is a software program, none of SMI's customers has access to the software itself. Instead, "SMI's customers can only view the specific user interface screens and reports they are given access to via the internet."[2] Bank branches enter their daily cash information into VaultWorks using these interface screens, and VaultWorks's output data is then displayed to those branches. SMI acknowledges that none of its customers was ever provided with the source code, object code, or software for VaultWorks.

BCS was one of SMI's largest customers. BCS and SMI first entered into a one-year agreement for the use of VaultWorks in May 2002. The parties extended the agreement several times, the last extension occurring in March 2010 for a term of two years.

ARGO, like SMI, develops software for the banking industry. It is significantly larger than SMI and offers a range of products. At all relevant times, BCS used ARGO's automatic teller program, BANKPRO Teller. Around 2004, ARGO began to develop its own cash management program, which

---

[2] *Spear Mktg., Inc. v. BancorpSouth Bank*, No. 3:12-CV-3583-B, 2014 WL 2608485, at *1 (N.D. Tex. June 11, 2014).

2

ARGO envisioned would eventually be bundled with its BANKPRO Teller. This product, named Cash Inventory Optimization ("CIO"), uses different predictive algorithms than does VaultWorks. Because CIO is installed directly on a bank's computers, it is integrated with the rest of the bank's operating system.[3] CIO thus "eliminates 'the need for branch personnel to manually input cash data,' as bank employees must do with VaultWorks."[4]

Starting in 2008, ARGO began pitching CIO and an upgraded version of the BANKPRO Teller system to BCS. BCS demurred on both products until March 2010, when it told ARGO that it would be interested in CIO if that system could be integrated with the existing version of BANKPRO Teller that BCS was then using rather than ARGO's upgraded replacement product. ARGO discussed this concern internally and, on April 1, 2010, emailed BCS that this integration would be possible.

Also around April 1, 2010, SMI contacted ARGO to see if it would be interested in acquiring SMI. ARGO expressed interest, representing that it neither had nor was currently developing a cash management product similar to VaultWorks. On the strength of ARGO's expression and representations, SMI arranged to demonstrate VaultWorks to ARGO, which it did over the phone and online on April 6. During this demonstration, which lasted approximately one hour, SMI disclosed confidential business and technical information about VaultWorks. After a few more exchanges, ARGO lost interest in acquiring SMI and stopped responding to SMI's emails.

Through the rest of 2010, ARGO continued marketing CIO to BCS. Finally, in early January 2011, BCS agreed to license CIO from ARGO. The two companies conducted a lengthy implementation process that lasted the

---

[3] *See id.* at *3.

[4] *Id.* (citation omitted).

No. 14-10753

rest of the year.  During this time, BCS sent ARGO various screenshots of the VaultWorks user interface because ARGO needed historical cash usage data from BCS's branches to troubleshoot CIO's forecasting function.  That data was readily accessible from the VaultWorks output screens for each branch.

CIO was finally implemented successfully at the end of 2011, and BCS "notified SMI on January 12, 2012 of its intention not to renew the VaultWorks Agreement."[5]  That agreement thus expired in February 2012.

In September 2012, SMI filed this suit against Defendants in Texas state court, alleging ten causes of action: violation of the Texas Theft Liability Act ("TTLA"), misappropriation of trade secrets, conversion, unjust enrichment, fraud, constructive fraud, breach of contract, tortious interference, unfair competition, and civil conspiracy.  SMI claimed that Defendants had stolen both technical and business trade secrets related to VaultWorks.

Defendants removed the case to federal court on the ground that SMI's claims were completely preempted by the Copyright Act.  SMI then amended its state court petition ("Original Petition") to delete its conversion claim and remove various references to copying and distribution.  It then moved for remand, contending that removal had been improper because none of its claims were preempted.  SMI explained in its opening brief that it voluntarily abandoned its conversion claim "[t]o narrow the issues in this lawsuit" and that it removed portions of its TTLA claim related to copying of trade secrets "even though this district's own precedent holds [those portions] are not preempted by the Copyright Act."  The district court denied SMI's motion, holding that the conversion and TTLA claims were completely preempted.  The court did not consider whether SMI's remaining claims were preempted, choosing instead to exercise supplemental jurisdiction over them per 28 U.S.C. § 1367.

---

[5] *Id.* at *6.

No. 14-10753

After discovery, Defendants filed a motion for summary judgment, seeking dismissal of all of SMI's remaining claims. The district court granted this motion, holding that "SMI ha[d] failed to establish that genuine factual disputes exist for certain essential elements of its nine Texas state law claims, and as such, summary judgment in Defendants' favor [wa]s warranted."[6] SMI timely appealed the summary judgment order and the order denying its motion to remand.

## II. ANALYSIS

### A. Denial of SMI's Motion to Remand

#### 1. *Standard of Review*

"We review the denial of a motion to remand to state court *de novo*."[7] Under this standard, "[a]ny underlying findings of fact are subject to review for clear error."[8]

#### 2. *Time-of-Filing Rule*

The district court considered SMI's motion to remand by evaluating the Original Petition for grounds for removal. SMI asserts that the district court should have considered SMI's amended complaint ("Amended Complaint"), in which SMI dropped its conversion claim and deleted language accusing Defendants of copying VaultWorks. Defendants counter that removal is assessed according to the time-of-filing rule.

"[J]urisdictional facts are determined at the time of removal, and consequently post-removal events do not affect that properly established jurisdiction."[9] It is this court's established precedent that once a case is

---

[6] *Id.* at \*19.

[7] *Energy Mgmt. Servs., LLC v. City of Alexandria*, 739 F.3d 255, 257 (5th Cir. 2014) (quoting *Roland v. Green*, 675 F.3d 504, 511 (5th Cir. 2012)).

[8] *Camsoft Data Sys., Inc. v. S. Elecs. Supply, Inc.*, 756 F.3d 327, 333 (5th Cir. 2014).

[9] *Louisiana v. Am. Nat. Prop. & Cas. Co.*, 746 F.3d 633, 636 (5th Cir. 2014).

properly removed, the district court retains jurisdiction *even if* the federal claims are later dropped[10] or dismissed.[11]  In *Brown v. Southwestern Bell Telephone Co.*, we held that "[w]hen a defendant seeks to remove a case, the question of whether jurisdiction exists is resolved by looking at the complaint *at the time the petition for removal is filed.*"[12]  We noted that "when there is a *subsequent* narrowing of the issues such that the federal claims are eliminated and only pendent state claims remain, federal jurisdiction is *not* extinguished."[13]  We wrote a thorough and definitive explanation of this issue in *Hook v. Morrison Milling Co.*:

> Before analyzing our appellate jurisdiction over this appeal, we first note that the district court's subject matter jurisdiction was *proper at all times*.  To begin with, this case was properly removed pursuant to 28 U.S.C. § 1446.  Hook's *original* petition alleged, *inter alia*, that she was wrongfully discharged in retaliation for filing a workers' compensation claim. . . . MMC's removal of Hook's claims was unquestionably proper. Furthermore, Hook's subsequent deletion of her wrongful discharge claim does not render MMC's removal improper.  We have stated on several occasions that a post-removal amendment to a petition that deletes all federal claims, leaving only pendent state claims, *does not* divest the district court of its *properly triggered* subject matter jurisdiction.  In a jurisdictional inquiry, we look at the complaint as it existed at the time the petition for removal was filed, regardless of any subsequent amendments to the complaint.[14]

Nothing cited by SMI disturbs this conclusion.  First, SMI relies on 28 U.S.C. § 1447(c), which requires a district court to remand an action "[i]f at any

---

[10] *See, e.g.*, *Lone Star OB/GYN Assocs. v. Aetna Health Inc.*, 579 F.3d 525, 528 (5th Cir. 2009) ("Once the case is removed, a plaintiff's voluntary amendment to a complaint will not necessarily defeat federal jurisdiction . . . ."); *Brown v. United Parcel Serv., Inc.*, No. 99-10092, 2000 WL 1701739, at *1 n.1 (5th Cir. Oct. 31, 2000) (unpublished).

[11] *See, e.g.*, *Giles v. NYLCare Health Plans, Inc.*, 172 F.3d 332, 339 (5th Cir. 1999) ("A district court, in its discretion, may remand supplemental state law claims when it has dismissed the claims that provide the basis for original jurisdiction.").

[12] 901 F.2d 1250, 1254 (5th Cir. 1990) (emphasis added).

[13] *Id.* (emphasis added).

[14] 38 F.3d 776, 779–80 (5th Cir. 1994) (emphases added) (footnotes omitted) (citations omitted).

time before final judgment it appears that the district court lacks subject matter jurisdiction."[15]  But this "any time" language regarding *jurisdictional* defects must be read in tandem with the first sentence of the subsection, which requires that motions to remand on the basis of *procedural* defects be brought within thirty days of removal.  When § 1447(c) is read in its entirety, it is clear that this rule does nothing more than specify the time in which remands for jurisdictional or procedural defects may be instituted; it contains no substantive provisions whatsoever.

Second, SMI quotes the Supreme Court's decision in *Grupo Dataflux v. Atlas Global Group, L.P.* as limiting the time-of-filing rule to diversity cases,[16] but nothing in that case suggests that the rule is not equally applicable to federal question cases.  And again, SMI ignores our direct precedent catalogued above.

Third, SMI relies on the Third Circuit's decision in *New Rock Asset Partners, L.P. v. Preferred Entity Advancements, Inc.*, which held that, in a case in federal court solely because of the involvement of the Resolution Trust Corporation ("RTC"), subsequent dismissal of the RTC did affect federal jurisdiction.[17]  But *New Rock* stands for the *very* limited proposition that 12 U.S.C. § 1441a(l)(1), which allowed removal of cases when the RTC was a party, could not support retaining jurisdiction once the RTC ceased to be a party.[18]  The decision makes no pronouncements as to that case's applicability

---

[15] 28 U.S.C. § 1447(c).

[16] 541 U.S. 567, 570–71 (2004) ("This time-of-filing rule is hornbook law (quite literally) taught to first-year law students in any basic course on federal civil procedure.  It measures all challenges to subject-matter jurisdiction premised upon diversity of citizenship against the state of facts that existed at the time of filing—whether the challenge be brought shortly after filing, after the trial, or even for the first time on appeal." (footnote omitted)).

[17] 101 F.3d 1492, 1495, 1503 (3d Cir. 1996).

[18] 12 U.S.C. § 1441a(l)(1) was repealed by the Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. No. 111-203, § 364(b), 124 Stat. 1376, 1555 (2010).

to other federal question cases.[19] Moreover, the Third Circuit is in the minority on this issue,[20] and, in an analogous case involving the FDIC, we firmly rejected *New Rock*'s very small exception to the time-of-filing rule.[21]

We conclude that the district court was correct to consider only the Original Petition when deciding SMI's motion to remand. SMI has conflated the question whether the *initial* removal was proper—which follows the time-of-filing rule—with the question whether the district court should, in its *discretion*, remand the case when the federal claims disappear as the case progresses.[22] SMI's motion sought remand under § 1447(c) and contended that *removal* had been improper, so the relevant record was the Original Petition.

### 3.     Complete Preemption

We turn now to the question whether the Original Petition provided a basis for federal jurisdiction. Defendants removed this case on the ground that 17 U.S.C. § 301(a), which establishes the exclusivity of the federal Copyright Act, completely preempts SMI's claims. Although preemption is usually a defense and thus not a basis for removal, when "the pre-emptive force of a [federal] statute is so 'extraordinary' that it converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule," removal is proper.[23] In *GlobeRanger Corp. v.*

---

[19] Furthermore, the Third Circuit went on to allow continued supplemental jurisdiction under 28 U.S.C. § 1367. *See New Rock*, 101 F.3d at 1510–11.

[20] *See Adair v. Lease Partners, Inc.*, 587 F.3d 238, 242 (5th Cir. 2009) ("In the minority is the Third Circuit, which holds that original federal jurisdiction ceases with the dismissal of a FIRREA federal corporation and only supplemental jurisdiction remains.").

[21] *See Bank One Tex. Nat'l Ass'n v. Morrison*, 26 F.3d 544, 547–48 (5th Cir. 1994) (per curiam).

[22] *See Giles v. NYLCare Health Plans, Inc.*, 172 F.3d 332, 339 (5th Cir. 1999); *Bentley v. Tarrant Cty. Water Control & Improvement Dist. No. One*, No. 94-41044, 1995 WL 534726, at *2 (5th Cir. 1995) (unpublished).

[23] *GlobeRanger Corp. v. Software AG*, 691 F.3d 702, 705 (5th Cir. 2012) (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987)) (internal quotation mark omitted).

No. 14-10753

*Software AG*, we held that § 301(a) "completely preempts the substantive field."[24]

We use a two-part test to determine whether a state law claim is preempted by the Copyright Act:

> First, the claim is examined to determine whether it falls "within the subject matter of copyright" as defined by 17 U.S.C. § 102. And second, "the cause of action is examined to determine if it protects rights that are 'equivalent' to any of the exclusive rights of a federal copyright, as provided in 17 U.S.C. § 106."[25]

A claim must satisfy both prongs of this test to be preempted.[26] If any claim is preempted, however, the entire action may be removed.[27] Applying this test, the district court held that SMI's TTLA and conversion claims were at least partially preempted by § 301(a). It then exercised supplemental jurisdiction over the remainder of SMI's state law claims.

### a.    *Subject Matter of Copyright*

The statutory basis for complete copyright preemption is found in 17 U.S.C. § 301(a), which states:

> [A]ll legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and *come within the subject matter of copyright as specified by sections 102 and 103*, whether . . . published or unpublished, are governed exclusively by this title. Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.[28]

Section 102(a) extends federal copyright protection to "original works of authorship fixed in any tangible medium of expression."[29] Section 102(b)

---

[24] *Id.* at 706.

[25] *Carson v. Dynegy, Inc.*, 344 F.3d 446, 456 (5th Cir. 2003) (footnote omitted) (citation omitted) (quoting *Daboub v. Gibbons*, 42 F.3d 285, 289 (5th Cir. 1995)).

[26] *See id.*

[27] *See GlobeRanger*, 691 F.3d at 706.

[28] 17 U.S.C. § 301(a) (emphasis added).

[29] *Id.* § 102(a).

excludes from copyright protection "any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work."[30]

The parties dispute whether § 301(a) preemption extends to all works satisfying the requirements of § 102(a), even those that also contain noncopyrightable material as defined in § 102(b). SMI asserts that it carefully defined its trade secrets to include only "know-how, ideas, procedures, processes, systems, methods of operation, and concepts," thus excluding them from the subject matter of copyright. Defendants counter that the first element of the preemption analysis focuses not on the *copyrightability* of the expression at issue, but on whether the alleged work is the *type* of work described in 17 U.S.C. § 102. According to Defendants, the relevant inquiry is whether the property at issue—in this case, a software program—is an original, fixed work under § 102(a). If it is, then it does not matter if it also contains elements that are unprotected under § 102(b).

We have never definitively addressed this interaction of § 301(a) and § 102. *GlobeRanger*, our most recent foray into copyright preemption, appears to touch on the issue, but the claims in that case involved actual physical acts, not just software:

> The current case contains plausible allegations that extend *beyond software*. For example, one part of GlobeRanger's petition alleges that "Defendants could see how GlobeRanger went about actually deploying on site, how it set up its readers, how it tagged its product, how it incorporated business process into the design of the warehouse, and how it had trained sailors."[31]

---

[30] *Id.* § 102(b). Section 103, which is not relevant to this case, extends copyright protection to compilations and derivative works. *Id.* § 103.

[31] *GlobeRanger*, 691 F.3d at 708 (emphasis added).

We thus held that at least some of the plaintiff's claims were not preempted.[32] But *GlobeRanger* did not squarely address the question whether processes and systems that *had* been fixed in a tangible medium of expression are included in the subject matter of copyright.[33]

Neither do our other copyright preemption cases shed much light on the instant question. Many of our decisions rest on the second ("equivalency") element of the preemption test,[34] sometimes because the parties concede the subject-matter element.[35] In fact, only two of our cases discuss the subject matter of copyright at any length. First, *Alcatel USA, Inc. v. DGI Technologies, Inc.* came close to concluding that "the use of uncopyrightable information . . . contained within . . . copyrightable works" does not prevent preemption.[36] Second, we held in *Brown v. Ames* that a musician's name and likeness do not fall within the subject matter of copyright because a *persona* is not an original work produced by an author.[37] The distinguishing feature of *Brown* was that the misappropriation claim involved the use of a fundamentally intangible concept.[38]

---

[32] *See id.* at 709.

[33] There is some limited Fifth Circuit support for the idea that § 301(a) preempts more than the Copyright Act protects. *See Real Estate Innovations, Inc. v. Hous. Ass'n of Realtors, Inc.*, 422 F. App'x 344, 348–49 (5th Cir. 2011) (per curiam) (unpublished) ("Though perhaps counter-intuitive, it is settled that the absence of a copyright registration does not preclude the application of the doctrine of preemption that exists under the Copyright Act.").

[34] *See Carson v. Dynegy, Inc.*, 344 F.3d 446, 456 (5th Cir. 2003); *Comput. Mgmt. Assistance Co. v. Robert F. DeCastro, Inc.*, 220 F.3d 396, 404 (5th Cir. 2000); *Taquino v. Teledyne Monarch Rubber*, 893 F.2d 1488, 1501 (5th Cir. 1990).

[35] *See Real Estate Innovations*, 422 F. App'x at 349; *Daboub v. Gibbons*, 42 F.3d 285, 289 (5th Cir. 1995).

[36] 166 F.3d 772, 786 (5th Cir. 1999) (emphasis omitted). But, in *Alcatel*, the plaintiff "consistently framed its misappropriation count in the context of [the defendant's] use of its *firmware*, *operating system software* and *DSP manuals*"—all tangible media—and failed to object to the district court's jury instruction on the defendant's "use of these *works*" rather than on the "specific pieces of information contained in them." *Id.*

[37] 201 F.3d 654, 658 (5th Cir. 2000).

[38] *See id.* at 659 (comparing names and likenesses to vocal styles, which are also fundamentally unfixed and not copyrightable).

Looking to other circuits, we find a clear and lopsided split. The Second,[39] Fourth,[40] Sixth,[41] and Seventh Circuit,[42] as well as the Ninth Circuit en banc,[43] all recognize that, for the purpose of preemption under § 301(a), ideas fixed in tangible media fall within the subject matter of copyright. Only the Eleventh Circuit disagrees, holding that "[i]deas are substantively ineligible for copyright protection and, therefore, are categorically excluded from the subject matter of copyright" even if "expressed in a tangible medium."[44]

The venerable treatise *Nimmer on Copyright* agrees with the majority of circuits: "Though the matter is not without controversy, [*Nimmer*] concludes that the better view is that ideas do fall within the subject matter of copyright for purposes of pre-emption (albeit pre-emption may still be avoided on the basis of lack of equivalence)."[45] This treatise notes that "the majority position in the courts comports with legislative history."[46] Furthermore, *Nimmer* points to two policy justifications for this position: (1) Congress made a policy decision to exclude ideas from federal copyright protection, so "state laws that

---

[39] *Forest Park Pictures v. Universal Television Network, Inc.*, 683 F.3d 424, 430 (2d Cir. 2012); *see also Nat'l Basketball Ass'n v. Motorola, Inc.*, 105 F.3d 841, 849 (2d Cir. 1997) ("Copyrightable material often contains uncopyrightable elements within it, but Section 301 preemption bars state law misappropriation claims with respect to uncopyrightable as well as copyrightable elements.").

[40] *U.S. ex rel. Berge v. Bd. of Trustees of the Univ. of Ala.*, 104 F.3d 1453, 1463 (4th Cir. 1997).

[41] *Stromback v. New Line Cinema*, 384 F.3d 283, 300 (6th Cir. 2004); *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 455 (6th Cir. 2001).

[42] *ProCD, Inc. v. Zeidenberg*, 86 F.3d 1447, 1453 (7th Cir. 1996).

[43] *Montz v. Pilgrim Films & Television, Inc.*, 649 F.3d 975, 979 (9th Cir. 2011) (en banc) ("[S]tate-law protection for fixed ideas falls within the subject matter of copyright and thus satisfies the first prong of the statutory preemption test, despite the exclusion of fixed ideas from the scope of actual federal copyright protection.").

[44] *Dunlap v. G&L Holding Grp., Inc.*, 381 F.3d 1285, 1297 (11th Cir. 2004).

[45] 1 MELVILLE B. NIMMER & DAVID NIMMER, NIMMER ON COPYRIGHT § 1.01[B][2][c] (Matthew Bender, Rev. Ed.).

[46] 5 NIMMER, *supra* note 45, § 19D.03[A][2][b].

protect fixed ideas trench upon" this deliberate exclusion; and (2) "if ideas were deemed outside the 'scope' of copyright protection—so that state laws protecting them could never be considered pre-empted—the result would be that state law could be used to protect . . . even those ideas embodied in published literary works."[47]

The Fourth Circuit's explanation in *U.S. ex rel. Berge v. Board of Trustees of the University of Alabama* aligns with *Nimmer*.[48]  In noting that § 102(b) excludes ideas from *protection* but that § 301(a) preempts everything that falls within the *scope* of copyright, the court remarked simply that "scope and protection are not synonyms."[49]  It went on to observe that "the shadow actually cast by the Act's preemption is notably broader than the wing of its protection."[50]  The position of the majority of circuits clearly delineates between the purpose of federal copyright *preemption* and that of federal copyright *protection*.  Congress intended the Copyright Act to protect some expressions but not others, and it wrote § 301(a) to ensure that the states did not undo this decision:

> [O]ne function of § 301(a) is to prevent states from giving special protection to works of authorship that Congress has decided should be in the public domain, which it can accomplish only if "subject matter of copyright" includes all works of a type covered by sections 102 and 103, even if federal law does not afford protection to them.[51]

---

[47] *Id.*

[48] 104 F.3d 1453, 1463 (4th Cir. 1997).

[49] *Id.*

[50] *Id.*

[51] *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 455 (6th Cir. 2001) (quoting *ProCD, Inc. v. Zeidenberg*, 86 F.3d 1447, 1453 (7th Cir. 1996)).

No. 14-10753

Finding this reasoning is persuasive,[52] we join the majority position and hold that state law claims based on ideas fixed in tangible media are preempted by § 301(a).

When we apply this principle to SMI's claims, we see that the technical trade secrets found within VaultWorks fall within the subject matter of copyright. First, computer software is a tangible medium protected by the Copyright Act.[53] Second, SMI claims as trade secrets, *inter alia*, "the selection of categories of input data used by VaultWorks . . . [and] selection of categories of output data to be generated by VaultWorks." Although some of these may be ideas, they are "fixed," so to speak, in the VaultWorks software user interface. As the crux of SMI's case is that ARGO stole its trade secrets by (1) enticing SMI to perform a demo of its software to ARGO, as part of an acquisition pitch, and (2) receiving screenshots of VaultWorks from BCS during the implementation of CIO, SMI cannot dispute that these ideas have appeared in a tangible medium. And as the tangible medium falls within the subject matter of copyright as defined in § 102(a), so do the specific trade secrets contained within it.

*b.     Equivalency of Copyright Protection and State Law Claims*

Having established that SMI's trade secrets fall within the subject matter of copyright, the next step in the complete preemption analysis is the equivalency test: We examine SMI's causes of action "to determine if [they] protect[] rights that are 'equivalent' to any of the exclusive rights of a federal

---

[52] *Cf. Daboub v. Gibbons*, 42 F.3d 285, 288 (5th Cir. 1995) ("Section 301(a) accomplishes the general federal policy of creating a *uniform* method for protecting and enforcing certain rights in intellectual property by preempting other claims." (emphasis added)).

[53] *See Eng'g Dynamics, Inc. v. Structural Software, Inc.*, 26 F.3d 1335, 1341 (5th Cir. 1994), *opinion supplemented on denial of reh'g*, 46 F.3d 408 (5th Cir. 1995).

copyright."[54]  The district court held that SMI's conversion and TTLA claims were completely preempted, and we agree.

In the conversion section of the Original Petition, SMI claimed that it owned "certain physical property, documents, and confidential information pertaining to VaultWorks" and "certain trade secrets pertaining to [its] proprietary ideas, processes, and/or other methodologies of VaultWorks."  SMI then contended that Defendants "knowingly or intentionally, with malice, and without SMI's consent, exercised dominion and control over SMI's property."

To the extent that SMI's claim alleges conversion of physical property, it is not preempted by § 301(a).[55]  Physical property—as opposed to intellectual property fixed in a tangible medium—does not fall within the scope of interests protected by the Copyright Act.[56]  As for intangible property, we have held "that claims for conversion of intangible property are preempted."[57]  Thus, SMI's conversion claim, to the extent it alleges conversion of intangible "confidential information" and "certain trade secrets," is preempted.

SMI's TTLA claim, as advanced in its Original Petition, consists of three allegations: (1) Defendants "stole[] SMI's physical property, documents, and confidential information"; (2) they "copied objects, materials, devices or substances, including writings representing SMI's confidential information"; and (3) they "communicated and transmitted SMI's confidential information." Although we have never applied the equivalency test to claims under the Texas

---

[54] *Carson v. Dynegy, Inc.*, 344 F.3d 446, 456 (5th Cir. 2003) (quoting *Daboub*, 42 F.3d at 289).

[55] *See id.* at 457.

[56] *See id.* (noting that a state law protecting rights in physical property does not obstruct the purpose of the Copyright Act).

[57] *GlobeRanger Corp. v. Software AG*, 691 F.3d 702, 709 (5th Cir. 2012) (citing *Daboub*, 42 F.3d at 289–90); *see also Real Estate Innovations, Inc. v. Hous. Ass'n of Realtors, Inc.*, 422 F. App'x 344, 350 (5th Cir. 2011) (per curiam) (unpublished); *Alcatel USA, Inc. v. DGI Techs., Inc.*, 166 F.3d 772, 786 (5th Cir. 1999); *Taquino v. Teledyne Monarch Rubber*, 893 F.2d 1488, 1501 (5th Cir. 1990).

Theft Liability Act, one of our district courts has concluded that a TTLA claim "is preempted as to the theft of trade secrets that fall within the subject matter of copyright."[58]  The court did note that under Texas law, theft includes a *mens rea* requirement—"knowingly"—but relied on the well-established rule that "elements of knowledge do not establish an element that is qualitatively different from a copyright infringement claim" to hold that the plaintiff's TTLA claim was nonetheless preempted.[59]  And, SMI's other allegations fall squarely within the exclusive rights protected by 17 U.S.C. § 106.  Copying, communicating, and transmitting are equivalent acts to reproducing and distributing.[60]  Thus, SMI's TTLA claim is also preempted.[61]

We conclude by affirming the district court's denial of SMI's motion to remand and holding that it properly exercised jurisdiction over this action as a result of complete preemption by the Copyright Act.[62]

---

[58] *M-I LLC v. Stelly*, 733 F. Supp. 2d 759, 791 (S.D. Tex. 2010).

[59] *Id.* at 790–91.  This conclusion is consistent with *Nimmer*: "[T]he mere fact that a state law requires *scienter* as a condition to liability, whereas the Copyright Act does not, cannot save the state law from pre-emption."  1 NIMMER, *supra* note 45, § 1.01[B][1].

[60] 17 U.S.C. § 106(a)(1), (a)(2).

[61] The district court, having concluded that two of SMI's claims were preempted, declined to consider whether its eight remaining claims were also preempted.  Finding instead that all of SMI's claims derive from the same nucleus of operative fact, it exercised supplemental jurisdiction over those remaining eight claims under 28 U.S.C. § 1367.  This exercise of supplemental jurisdiction over the non-preempted claims was not error.

[62] We do not decide the appropriate course of action for claims found to be completely preempted.  As a general rule, when a claim is completely preempted, it is considered to be grounded in federal law even if pleaded in terms of state law.  *Aetna Health Inc. v. Davila*, 542 U.S. 200, 207–08 (2004).  That is the rationale behind allowing complete preemption to serve as an exception to the well-pleaded complaint rule.  Yet that doctrinal theory does not answer the question, "What is the status of that claim?"  District courts in this circuit are split.  Most hold that "[c]omplete preemption results in dismissal of the state-law claim," even though they "typically allow plaintiffs to replead and assert the dismissed state law claims as federal claims."  *Encompass Office Sols., Inc. v. Ingenix, Inc.*, 775 F. Supp. 2d 938, 949 (E.D. Tex. 2011).  Defendants, as well as the Second Circuit, urge this approach.  *See Briarpatch Ltd., L.P. v. Phx. Pictures, Inc.*, 373 F.3d 296, 308–09 (2d Cir. 2004).  But at least one of our district courts does not dismiss the claim, instead treating it as having become a properly asserted federal claim and proceeding to adjudicate it on the merits.  *See Kersh v. UnitedHealthcare Ins. Co.*, 946 F. Supp. 2d 621, 630 (W.D. Tex. 2013).  We have never

## B.     Summary Judgment

### 1.     Standard of Review

"We review a grant of summary judgment *de novo* under the same standard applied by the district court."[63]  Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[64]  We consider the evidence in the

---

squarely addressed this question, even though our decision in *GlobeRanger* appears to provide support for the dismissal approach.  *See* 691 F.3d at 706 (noting that if *all* of the plaintiff's claims were preempted by the Copyright Act, "the case should be dismissed"); *see also Quality Infusion Care Inc. v. Humana Health Plan of Tex. Inc.*, 290 F. App'x 671, 676–77 (5th Cir. 2008) (unpublished).  *But see McGowin v. ManPower Int'l, Inc.*, 363 F.3d 556, 558, 559 (5th Cir. 2004) (affirming dismissal of a claim completely preempted by ERISA on the ground that the claim was therefore barred due to failure to exhaust administrative remedies, thus implying that the state law claim was automatically converted to a federal one).

The parties did not brief this issue, and the district court did not appear to consider it.  Indeed, the district court neither dismissed the partially preempted claims (while allowing SMI to amend) nor expressly converted those claims to federal ones (i.e., treated them like claims for copyright infringement), before granting Defendants' motion for summary judgment.  Any error, however, is harmless, as SMI cannot satisfy the elements of copyright infringement.  "A copyright infringement claim requires proof of (1) ownership of a valid copyright and (2) actionable copying, which is the copying of constituent elements of the work that are copyrightable." *Bridgmon v. Array Sys. Corp.*, 325 F.3d 572, 576 (5th Cir. 2003).  Actionable copying consists of (1) actual copying, i.e. "whether the alleged infringer . . . 'actually used the copyrighted material in his own work'"; and (2) substantial similarity between the two works. *Id.* (quoting *Eng'g Dynamics, Inc. v. Structural Software, Inc.*, 26 F.3d 1335, 1340 (5th Cir. 1994)).  As discussed further *infra*, SMI has produced no evidence that ARGO actually *used* VaultWorks in developing CIO.  Actual copying may also be proved with circumstantial evidence "if the defendant had access to the copyrighted work and there is 'probative similarity' between the works." *Id.* (quoting *Eng'g Dynamics*, 25 F.3d at 1340).  But, even if SMI were to rely exclusively on circumstantial evidence, it has not pointed to any similarities between the two products sufficient to satisfy the "probative similarity" test. *See Positive Black Talk Inc. v. Cash Money Records, Inc.*, 394 F.3d 357, 370 (5th Cir. 2004) (defining probative similarity as "similarities between the two works (whether substantial or not) that, in the normal course of events, would not be expected to arise independently").  Furthermore, SMI has not performed a side-by-side comparison of the two programs, a failure fatal to the substantial similarity prong of the test. *See Bridgmon*, 325 F.3d at 577 ("[T]he law of this circuit prohibits finding copyright infringement without a side-by-side comparison of the two works . . . .").

[63] *Boone v. Citigroup, Inc.*, 416 F.3d 382, 392–93 (5th Cir. 2005).

[64] FED. R. CIV. P. 56(a).

light most favorable to the nonmoving party and draw all reasonable inferences in its favor.[65]

"Once a movant who does not have the burden of proof at trial makes a properly supported motion" for summary judgment, "the burden shifts to the nonmovant to show that [the motion] should not be granted."[66]  To do so, the nonmovant must "identify specific evidence in the record and . . . articulate the precise manner in which that evidence supports his or her claim."[67]  Neither we nor the district court has a duty to "sift through the record in search of evidence to support" the nonmovant's opposition to summary judgment.[68]

### 2.    *Misappropriation of Trade Secrets*

"Trade secret misappropriation under Texas law is established by showing: (a) a trade secret existed; (b) the trade secret was acquired through a breach of a confidential relationship or discovered by improper means; and (c) use of the trade secret without authorization from the plaintiff."[69]  In their motion for summary judgment, Defendants challenged the first and third elements of the test, contending that (1) SMI's purported trade secrets were not entitled to legal protection because they were not "substantially secret"; and (2) Defendants did not "use" SMI's purported trade secrets in developing or implementing the CIO software.  SMI responded that (1) it had taken precautions to protect its trade secrets; and (2) Defendants used these trade secrets to develop CIO and validate the implementation of that software for BCS.  The district court, assuming without deciding that SMI did indeed

---

[65] *See Lawyers Title Ins. Corp. v. Doubletree Partners, L.P.*, 739 F.3d 848, 856 (5th Cir. 2014).

[66] *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

[67] *Id.*; *accord RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010).

[68] *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n.7 (5th Cir. 1992)).

[69] *Wellogix, Inc. v. Accenture, L.L.P.*, 716 F.3d 867, 874 (5th Cir. 2013) (quoting *Phillips v. Frey*, 20 F.3d 623, 627 (5th Cir. 1994)).

possess the trade secrets at issue, held that SMI had not demonstrated that they were "used" in the manner described by SMI, so SMI had failed to point to any genuine dispute regarding the third element of its misappropriation claim.

"As a general matter, any exploitation of the trade secret that is likely to result in injury to the trade secret owner or enrichment to the defendant is a 'use[.]'"[70] We have noted that the definition of "use" is "broad"[71] and includes such activities as "marketing goods that embody the trade secret, employing the trade secret in manufacturing or production, relying on the trade secret to assist or accelerate research or development, or soliciting customers through the use of information that is a trade secret."[72] Despite this generous definition of "use," however, we agree with the district court that SMI has failed to point to any evidence suggesting that ARGO or BCS *used* its purported trade secrets.

First, SMI contends that it "produced a substantial amount of direct evidence establishing that BancorpSouth shared SMI's trade secrets with ARGO in order to help ARGO finalize the development and implantation [sic] of CIO." It then cites, without explanation,[73] seven documents from the record, some of which suggest *disclosure* of information related to VaultWorks, but none of which indicates that this information was *used* "to help ARGO finalize the development and implantation [sic] of CIO." In other words, SMI has produced evidence relevant to the second element of its misappropriation claim, but not to the third. Our analysis might be different if, for example, SMI had also alleged that ARGO modified CIO's source code after accessing

---

[70] *Id.* at 877 (alteration in original) (quoting *Gen. Universal Sys., Inc. v. HAL, Inc.*, 500 F.3d 444, 451 (5th Cir. 2007)).

[71] *Bohnsack v. Varco, L.P.*, 668 F.3d 262, 279 (5th Cir. 2012).

[72] *Wellogix*, 716 F.3d at 877 (quoting *Gen. Universal Sys.*, 500 F.3d at 451).

[73] *See Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

SMI's trade secrets, or that ARGO had redesigned CIO's interface in some way, and if SMI had supported such allegations with some proof of these changes. But, we have stated that when the trade secret at issue is a *technical* feature of a computer program—as opposed to "marketing or mode of doing business trade secret[]"—"the issue of misuse boils down to evidence of *copying*."[74] SMI has produced nothing to suggest that ARGO copied any design elements of VaultWorks,[75] let alone that ARGO used SMI's purported trade secrets in any manner.

Second, SMI contends "that, on multiple occasions, ARGO requested access to SMI's trade secrets so that it could test and validate its own product, and . . . BancorpSouth sent ARGO those trade secrets." But SMI's record citations indicate, at most, that ARGO requested *data* from BCS so that it could calibrate CIO to handle anomalous cashflow situations. SMI does not and cannot claim as its own trade secret BCS's branch cashflow data. Moreover, SMI incorrectly credits an unpublished case from this court, *Cudd Pressure Control Inc. v. Roles*,[76] for holding that "an alleged misappropriator's use of a trade secret 'to validate' its own product was enough to raise a genuine issue of material fact as to trade secret use." In *Cudd*, however, a former employee showed Cudd Pressure Control's confidential financial data to potential investors to secure financing for his own newly formed competing venture, in essence "validat[ing]" that such a business model was viable.[77] This type of validation is qualitatively different from the validation that allegedly

---

[74] *Plains Cotton Coop. Ass'n of Lubbock v. Goodpasture Comput. Serv., Inc.*, 807 F.2d 1256, 1263 (5th Cir. 1987) (emphasis added).

[75] *See id.* ("If appellees did not in any way 'copy' any part of appellant's protected idea or expression, then appellant cannot demonstrate trade secret misappropriation any more than it can show copyright infringement.").

[76] 328 F. App'x 961 (5th Cir. 2009) (unpublished).

[77] *Id.* at 966.

occurred here—the use of BCS's *own records*, as displayed in a printout from VaultWorks, to test CIO's predictions with BCS's historical data. SMI's reliance on *Cudd* is misplaced.

Third, SMI advances a theory of trade secret use premised on timing. According to SMI, "a jury could reasonably infer that [Defendants] used SMI's trade secrets" because ARGO, after years of unsuccessful attempts to license CIO to BCS, made headway with BCS at about the same time that SMI attempted to sell VaultWorks to ARGO. But, not only does SMI fail to identify how its trade secrets were allegedly used by Defendants,[78] it also cites no legal authority for the proposition that a mere coincidence in timing can support an inference of trade secret use.

Rather, it appears that SMI relies on the access-plus-similarity test proposed by the Restatement (Third) of Unfair Competition for circumstantial proof of trade secret use: "Although the trade secret owner bears the burden of proving unauthorized use, proof of the defendant's knowledge of the trade secret *together with* substantial similarities between the parties' products or processes may justify an inference of use by the defendant."[79] But SMI points to no similarity between CIO's interface with BCS's BANKPRO Teller system and VaultWorks's interface. In fact, despite ARGO's invitation, SMI never had

---

[78] As a factual matter, it appears that BCS's long-standing reservations about CIO concerned its integration with the text-based teller program—BANKPRO Teller, also developed by ARGO—that BCS was using. ARGO was working on addressing this concern before SMI ever demonstrated VaultWorks to ARGO. Moreover, though SMI claims that, during its demonstration of VaultWorks to ARGO, it "described how data from an automated teller system was interfaced into VaultWorks directly," it never explains how ARGO then used this information to integrate CIO with the teller system. Mere knowledge of how VaultWorks functioned is insufficient to imply use of VaultWorks's trade secrets; otherwise, the second and third elements of the misappropriation test would collapse into each other.

[79] RESTATEMENT (THIRD) OF UNFAIR COMPETITION § 40 cmt. c (1995) (emphasis added); *see also Gen. Universal Sys., Inc. v. HAL, Inc.*, 500 F.3d 444, 451 n.5 (5th Cir. 2007) ("[T]he Texas Supreme Court has at times relied on the Restatement 3d of Unfair Competition." (citing *In re Bass*, 113 S.W.3d 735, 739–40 (Tex. 2003))).

any expert perform a side-by-side comparison of the two programs. Instead, SMI rests its entire argument for similarity on the coincidence of timing and on the fact that VaultWorks and CIO perform the same general function. The element of "substantial similarity" would be rendered toothless, however, if it could be satisfied by the mere fact that two products occupy the same commercial niche. Such an overly generous application of the test would allow an inference of use in virtually every trade secret misappropriation claim in which there is evidence of disclosure. This cannot be the result intended by the Restatement.

On this evidence, it would not be reasonable for a jury to infer that Defendants used SMI's trade secrets.[80] We therefore affirm the district court's dismissal of SMI's claim of misappropriation of trade secrets.

*3.    SMI's Remaining Claims*

The district court also dismissed all of SMI's remaining claims. It held that each of these claims (1) requires a finding of trade secret misappropriation and thus fail with the misappropriation claim, and (2) fails for an independent reason.

SMI's opening brief addresses its misappropriation claim only, omitting entirely any mention of its eight remaining claims. SMI has therefore waived its right to appeal the district court's judgment with respect to these claims.[81]

---

[80] SMI also alleges that the district court improperly weighed evidence by crediting "ARGO's claim that CIO was market-ready before ARGO had access to SMI's VaultWorks-related trade secrets" over evidence showing that "CIO was not fully implemented at BancorpSouth for more than a year <u>after</u> ARGO had gained access to SMI's trade secrets." Contrary to SMI's assertions, these statements are not contradictory. A new product may be ready for sale and still require a significant rollout effort. Indeed, SMI implicitly acknowledges the existence of these two distinct phases in a computer program's lifecycle when it contends that its trade secrets were used by ARGO in the "development *and* implantation [sic] of CIO" (emphasis added).

[81] *See Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 260 n.9 (5th Cir. 1995) ("[W]e do not consider issues raised for the first time in a reply brief.").

No. 14-10753

Moreover, SMI's reply brief contains only the conclusional statement: "Likewise, SMI's remaining claims were viable." It then cites only part of SMI's prior briefing in the district court. This bare bones citing does not satisfy the requirements of Federal Rule of Appellate Procedure 28(a).[82] By failing to identify any error in the district court's reasoning or submit any new authority in support of its position, SMI has waived merits consideration of its remaining eight claims.

### III.    CONCLUSION

For the foregoing reasons, we AFFIRM the district court's order denying SMI's motion for remand and its judgment dismissing SMI's action with prejudice.

---

[82] *See Alameda Films SA de CV v. Authors Rights Restoration Corp. Inc.*, 331 F.3d 472, 483 (5th Cir. 2003) ("Defendants do not provide us with any basis—either in their argument or by reference to the voluminous record—for determining that the district court committed the proffered errors. Thus, '[i]n the absence of logical argumentation or citation to authority, we decline to reach the merits of these claims.'" (alteration in original) (quoting *Meadowbriar Home for Children, Inc. v. Gunn*, 81 F.3d 521, 532 (5th Cir. 1996))); *United States v. Posada-Rios*, 158 F.3d 832, 867 (5th Cir. 1998) ("Murga cannot satisfy the requirements of Fed. R App. P. 28(a)(5) by merely referring to briefing filed with the district court."); *see also X Techs., Inc. v. Marvin Test Sys., Inc.*, 719 F.3d 406, 411 n.3 (5th Cir. 2013) (characterizing *Posada-Rios* as "holding that arguments that do not satisfy Federal Rule of Appellate Procedure 28 because they 'merely refer[ ] to briefing filed with the district court' are waived" (alteration in original) (quoting 158 F.3d at 867)).